**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Brent James CARLSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 29, 1997.

Filed Jan. 13, 1998.

Jack W. Cline, Mercer, for appellant.

David A. Hepting, Asst. Dist. Atty., Butler, for Com., appellee.

Before KELLY, HUDOCK and BROSKY, JJ.

HUDOCK, Judge:

This is an appeal from the judgment of sentence after a jury convicted Appellant of driving under the influence of alcohol.[1] Appellant was subsequently sentenced to a term of 90 to 180 days incarceration and a fine of $500.00, followed by two years of probation. This direct appeal followed. We reverse and remand.

The pertinent facts may be summarized as follows: Late in the evening on October 13, 1995, Arthur Brunst (Brunst), a wildlife conservation officer with the Pennsylvania Game

---

**8.** Appellant's briefs incorrectly exchange the docket numbers listed above.

**1.** 75 Pa.C.S.A. § 3731(a)(1). Appellant's first trial ended in a mistrial on November 15, 1996, when the jury was hopelessly deadlocked. He was tried again and convicted on January 28, 1997.

Commission, and a fellow officer, had retrieved the carcass of a deer that had been shot for causing crop damage. Brunst was transporting the carcass north on Route 308, in Butler County, with the intention of depositing it at the game lands building located just off the highway. Prior to reaching the entrance to the game lands building, Brunst noticed Appellant's vehicle in front of him, and he observed the vehicle weave and cross the center line one time.

Brunst then reached the entrance to the game lands building, but rather than deliver the deer carcass as intended, he decided to follow Appellant's vehicle. He followed Appellant for approximately three-quarters of a mile to a mile, during which time he observed the vehicle cross the center line once more, and drop off the right edge of the road seven times. Appellant then exited Route 308 to a side road, and Brunst executed a stop of his vehicle. After obtaining Appellant's identification, Brunst radioed his dispatcher and requested that the Pennsylvania State Police be contacted. Upon being informed that it would be one hour until the nearest unit was available, Brunst proceeded to personally effect an arrest of Appellant for driving under the influence.

Appellant's sole issue on appeal raises a question of first impression in our Courts: What is the extent of the arrest powers of a wildlife conservation officer of the Pennsylvania Game Commission? The suppression court upheld the legality of Brunst's arrest of Appellant under these facts, and Appellant now challenges this conclusion.

■ Our standard of review is as follows: In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are sup-

ported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. *Commonwealth v. Rosario,* 438 Pa.Super. 241, 652 A.2d 354, 365 (1994) (*en banc*) (quoting *Commonwealth v. Foster,* 425 Pa.Super. 61, 624 A.2d 144, 147 (1993)). The factual findings of the suppression court, which are supported by the record, are not in dispute. Appellant challenges the legal conclusion drawn from those facts.

The pertinent portion of the Game and Wildlife Code reads as follows:

### § 901. Powers and duties of enforcement officers

**Powers.**—Any officer whose duty it is to enforce this title or any officer investigating any alleged violation of this title shall have the power and duty to:

(1) Enforce all laws of this Commonwealth relating to game or wildlife and arrest any person who has violated any of the provisions of this title while in pursuit of that person immediately following the violation.

\*　　\*　　\*

(17) When acting within the scope of the officer's employment, pursue, apprehend or arrest any individual suspected of violating any provision of Title 18 (relating to crimes and offenses) or any other offense classified as a misdemeanor or felony. The officer shall also have the power to serve and execute warrants issued by the proper authorities for offenses referred to in this paragraph and to serve subpoenas issued for examination. All powers as provided for in this paragraph will be limited by such administrative procedure as the director, with the approval of the commission, shall proscribe. The regulations shall be promulgated within 90 days of the effective date of this paragraph.

34 Pa.C.S.A. § 901(a).[2]

The Game Commission has further defined the powers of wildlife conservation officers as follows:

---

**2.** Our legislature promulgated section 901 in 1986 and added subsection (17) in a 1990　　amendment.

**§ 131.6. Administration of police powers by wildlife conservation officers.**

(a) *General policy.*

(1) The primary responsibility of a wildlife conservation officer is the enforcement of the act and this part.

(2) Section 901(17) of the act (relating to powers and duties of enforcement officers) confers police powers upon wildlife conservation officers acting within the scope of their employment.

(3) It is the policy of the Commission that general law enforcement activities shall be the responsibility of the appropriate law enforcement agencies empowered to conduct those activities. Complaints or information received shall be forwarded to the enforcement agency having jurisdiction.

(b) *Powers and procedures.*

(1) A wildlife conservation officer may arrest for offenses enumerated in subsection (c) which constitute misdemeanors or felonies when the offenses occur in the officer's presence and while acting within the scope of the officer's employment.

(2) A wildlife conservation officer shall arrest for offenses enumerated in subsection (c) only when necessary to protect life and property. The officer shall immediately notify the appropriate law enforcement agency. Evidence and information in the possession of the officer shall be transmitted to the law enforcement agency responsible for further investigation or prosecution, or both.

(3) A wildlife conservation officer may institute proceedings for violations listed in subsection (c) that are misdemeanors or felonies which occur on State game lands or arise out of Commission operations.

(c) *Violations.* A wildlife conservation officer may, subject to the limitations in subsections (a) and (b), act only in cases of violations of the following provisions:

*       *       *

(3) Title 75 of the Pennsylvania Consolidated Statutes §§ 3731, 3732, 3735 and 3742.

(d) *Construction.* The administrative procedures in this section are intended to serve as guidelines for wildlife conservation officers in the performance of their duties. The administrative limitations in this subchapter do not invalidate an arrest, prosecution or law enforcement action incident thereto which a wildlife conservation officer may undertake, but which exceeds the limitations of subsections (a)—(c). Whenever wildlife conservation officers are acting within the scope of their employment, the principles of justification that apply to peace officers under 18 Pa.C.S. Chapter 5 (relating to principles of justification) shall apply to their acts.

58 Pa.Code § 131.6.

As a misdemeanor, driving under the influence is clearly one of the offenses for which a wildlife conservation officer is authorized to arrest under subsection 901(a)(17). Moreover, the Game Commission regulations (Regulations) specifically enumerate violations of 75 Pa.C.S.A. section 3731 as one category of offenses for which a wildlife conservation officer may arrest. However, it is also clear that a wildlife conservation officer is authorized to arrest for such an offense only "when acting within the scope of the officer's employment." 34 Pa.C.S.A. § 901(a)(17). Thus, in deciding whether Brunst was authorized to arrest Appellant under these facts, we must determine whether he was acting within the scope of his employment.

Brunst testified that, on the evening in question, his duty was to deposit a deer carcass at the game lands building.[3] While travelling north on Route 308 toward the game lands building, Brunst encountered Appellant's vehicle ahead of him. Brunst testi-

3. Brunst's testimony was uncontradicted as it was the sole evidence presented at the suppres- sion hearing.

fied that Appellant's vehicle had crossed .the center line once by the time he came upon the entrance to the game lands building. Brunst also testified that at this point Appellant had not interfered with any traffic as none was approaching from the opposite direction. Based upon this information, Brunst decided to delay the disposition of the deer carcass and to follow Appellant's vehicle. Thereafter, Brunst witnessed the additional instances of erratic driving.

Thus, while acting within the scope of his employment, Brunst witnessed one occasion where Appellant crossed the center line. Such an observance does not constitute sufficient facts for Brunst to articulate a reasonable suspicion or probable cause that Appellant was committing the offense of driving under the influence of alcohol. *Compare Commonwealth v. Lawrentz*, 453 Pa.Super. 118, 683 A.2d 303 (1996), *alloc. den.*, 548 Pa. 645, 695 A.2d 784 (1997) (where police officer observed defendant's vehicle weaving for a mile to a mile and a half, and vehicle crossed center line twice, legally sufficient basis to stop for unsafe driving existed); *and Commonwealth v. Hamme*, 400 Pa.Super. 537, 583 A.2d 1245 (1990) (erratic driving provided sufficient reasonable basis to support investigatory stop). We note, moreover, that contrary to the ordinary instance in which a police officer stops a vehicle, under no circumstances was Brunst authorized to conduct a stop of Appellant's vehicle pursuant to a summary offense motor vehicle violation. *See* 34 Pa.C.S.A. § 901(a)(17), *supra.* Accordingly, Brunst did not possess sufficient information, while acting within the scope of his employment, to arrest for driving under the influence.

Because Brunst developed the additional information regarding Appellant's driving only after he left the scope of his employment, his arrest of Appellant was illegal, and the fruits of that arrest should have been suppressed. *Commonwealth v. Brandt*, 456 Pa.Super. 717, 691 A.2d 934, 938–39 (1997), *alloc. den.*, 549 Pa. 695, 700 A.2d 437 (1997).

We are mindful of prior decisions of our Supreme Court narrowly construing arrest powers of other law enforcement agents not specifically given arrest powers for motor vehicle offenses. *See Commonwealth v. Price*, 543 Pa. 403, 672 A.2d 280 (1996). (FBI agent not authorized to arrest for driving under the influence because federal statute provides arrest power for felonies only); *Commonwealth v. Galloway*, 525 Pa. 12, 574 A.2d 1045 (1990) (plurality) (agent of Pennsylvania Attorney General's Office had no general arrest powers as statute provided limited authority to arrest). *But see Commonwealth v. Leet*, 537 Pa. 89, 641 A.2d 299 (1994) (deputy sheriff had common law power to arrest for motor vehicle violation).

The legislature promulgated subsection 901(a)(17) with express language limiting the powers of wildlife conservation officers. Significantly, rather than simply imbuing wildlife conservation officers with the power to arrest at any time, the language "when acting within the scope of the officer's employment" was chosen to define when they are permitted to act. Additionally, the legislature did not use broader and more permissive language, such as "anytime the officer is on duty." Had the legislature used such language, Brunst likely would have been authorized to effect this arrest because he was on duty at the time he first observed Appellant's driving. However, the statute does not appear to contemplate a wildlife conservation officer pursuing or arresting an individual when the reasonable suspicion or probable cause to suspect a violation of the law occurs when the officer is acting outside the scope of his primary duties.

An examination of the Regulations provides additional guidance and counsels toward this interpretation of the statute. The Regulations repeatedly use the language "while acting within the scope of the officer's employment" in defining when wildlife conservation officers may act. Subsection (a) sets forth the primary responsibility of wildlife conservation officers as enforcing the Game and Wildlife Code. Further, it declares the policy of the Game Commission that general law enforcement activities shall be the responsibility of the appropriate law enforcement agency. 58 Pa.Code § 131.6(a)(1), (3). It is then mandated that complaints or information received by an officer must be forwarded to the proper enforcement agency.

Additional limitations on an officer's power to arrest are further delineated as follows: An officer may arrest only when a misdemeanor or felony is committed in his presence; an officer shall arrest only when necessary to protect life and property; and an officer may institute proceedings only when the offense occurs on State game lands or arises out of Commission operations. 58 Pa.Code § 131.6(b). Thus, the Regulations illustrate the Commission's limited view of the arrest powers of its officers.[4]

Unlike other peace officers, the jurisdiction of wildlife conservation officers is not restricted to a limited geographical area within this Commonwealth. *Compare Brandt, supra* (jurisdiction of housing authority police limited to grounds of the authority and adjoining municipal property); and *Commonwealth v. Savage*, 403 Pa.Super. 446, 589 A.2d 696 (1991) (campus police jurisdiction limited to offenses on campus). The statutory grant of arrest powers to wildlife conservation officers is analogous to that of railroad and street railway police. In *Commonwealth v. Mundorf*, 699 A.2d 1299 (Pa.Super.1997), this Court considered the legality of an arrest for driving under the influence by a Port Authority Transit (PAT) officer. The relevant statute provided PAT officers with general arrest powers when "in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority *or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.*" 22 Pa.C.S.A. § 3303(a) (emphasis added). The PAT officer arrested the defendant while in a lane of traffic reserved for the use of PAT or emergency vehicles and while travelling from one PAT property to another. In upholding the legality of the arrest pursuant to the second statutory scenario, we stated:

> Although the Act does not define the precise duties to be executed by railway policemen, we note the uncontradicted sup-

pression hearing testimony of Officer Porter that his job was "[t]o make sure the bus lanes are clear of other traffic, to clear the other traffic out of the bus lanes if there is traffic." Officer Porter further testified that stopping vehicles which are driving in the bus lane and issuing citations ... for driving in a restricted lane are part of his normal duties. On these undisputed facts, the conclusion is inescapable that Officer Porter was discharging his official duties at the time of appellee's arrest. Nor can it be doubted that Officer Porter was discharging his duties in pursuit of PAT business.

*Mundorf*, 699 A.2d at 1301–02 (citations omitted).

Unlike the PAT officer in *Mundorf*, Brunst testified merely that his duty that evening was to deposit the deer carcass at the game lands building. Section 901 indicates that the primary duty of a wildlife conservation officer is to enforce the Game and Wildlife Code. No provision within the Game and Wildlife Code would require a wildlife conservation officer to generally patrol the highways and byways of this Commonwealth to enforce our criminal laws and Vehicle Code. Indeed, if the scope of a wildlife conservation officer's employment encompassed such a duty, then the limiting language of subsection 901(a)(17) would be superfluous. Even in *Mundorf*, where the PAT officer was undoubtedly acting within the scope of his duties, we stated:

> We caution, however, that it is only under facts similar to those in the instant case, *where the officer is on routine patrol and acts to prevent an immediate threat to the welfare of PAT passengers or property,* that we will validate an arrest conducted pursuant to the second provision of section 3303(a). Our decision in no way sanctions the authority of railway officers to engage in general enforcement of our criminal laws or [Vehicle Code.] In this regard, we share the concern of the trial court that

4. Although the statute delegates authority to the Commission to limit the powers of its officers by administrative procedure, we are also cognizant of subsection (d) of the Regulations providing that the administrative limitations discussed above do not invalidate an arrest by an officer who exceeds such limitations. However, we view the Regulations merely as persuasive authority probative of the intent of the Commission and do not view an officer's compliance or non-compliance as dispositive of the arrest's legality.

general police powers "should be exercised only by organized municipal or state police directly under the central authority of elected civilian officers[.]" (Slip Op. at 3.)

*Mundorf,* 699 A.2d at 1302.

This case presents similar concerns with respect to the general enforcement of our criminal laws and Vehicle Code by wildlife conservation officers. We concur with the policy of the Game Commission that general law enforcement activities are most appropriately conducted by the proper police force. *See* 58 Pa.Code § 131.6(a)(3). It may be reasonably presumed that the legislature had similar concerns due to its limiting the arrest powers of wildlife conservation officers to when they are acting within the scope of their employment. Accordingly, a wildlife conservation officer may arrest for a misdemeanor or felony only when they encounter such offense while carrying out their normal duties.

As noted previously, while discharging his duty, Brunst witnessed conduct which did not rise to the level of an articulable reasonable suspicion or probable cause that Appellant was committing the offense of driving under the influence. Therefore, Brunst was without authority to pursue and arrest Appellant. Brunst should have followed the dictates of the Regulations and forwarded the information he had lawfully gathered to the law enforcement agency having jurisdiction. Because Brunst exceeded his statutory authority, the arrest was illegal, and the fruits of that arrest should have been suppressed.

Judgment of sentence reversed; case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.