**Thomas FLAGG, Petitioner**

v.

**STATE SYSTEM OF HIGHER EDUCATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 16, 2006.

Decided July 26, 2006.

Review Denied by the Full Court Sept. 6, 2006.

Thomas Flagg, petitioner, pro se.

Wayne S. Melnick, Harrisburg, for respondent, State System of Higher Education.

Linda C. Barrett, Deputy General Counsel and Barbara Adams, General Counsel, Harrisburg, for respondent, Office of General Counsel.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Thomas Flagg (Flagg) appeals a final decision by General Counsel Barbara Adams affirming the decision of a subordinate officer within the Office of General Counsel (OGC) to deny his request for representation in connection with a civil action filed in the Chester County Court of Common Pleas against him by Victor J. Boland, Jr. (Boland) against Flagg, Cheyney University of Pennsylvania, a university within the State System of Higher Education (SSHE), and various university officials.

On February 28, 2004, Flagg was employed with SSHE as a police officer at Cheyney University. While on duty that day, Flagg decided to stop and purchase a newspaper, coffee and lottery tickets for himself at Reich's Texaco station. Immediately after completing his purchases, Flagg noticed that he had been short-changed by the station clerk and then started back to the store counter. One of the individuals in line at the time was Boland, who purportedly made disparaging remarks about Flagg's place of employment upon seeing the Cheyney University police uniform patch on his shirt. When Flagg ignored him, Boland became upset and unruly, cursed and went "directly up" in Flagg's face causing Flagg to conduct a pat-down search out of concern for his own safety. He found a large bottle of cough syrup on Boland's person, but did not find any weapons during the search.

On February 24, 2005, Boland filed a writ of summons against Flagg, Cheyney University and various university officials in the Chester County Court of Common

Pleas. Flagg requested representation and indemnification from the OGC in connection with Boland's lawsuit.[1] By letter dated March 30, 2005, Deputy General Counsel Barry Kramer notified Flagg that his request was denied because pursuant to 4 Pa.Code § 39.3(b)[2], he engaged in conduct undertaken in a bad faith exercise of his authority as a campus police officer, was outside the scope of his employment, or was malicious in nature.

Flagg appealed this decision to the OGC and also requested an administrative hearing on April 4, 2005. In the order scheduling the hearing, Hearing Examiner Jackie Wiest Lutz entered a scheduling order stating "[t]he burden of proof will be on

1. 42 Pa.C.S. § 8525 provides that the Commonwealth is required to defend or reimburse an employee for the defense of any action arising out of the course of his employment. It provides:

    When an action is brought under this subchapter against an employee of the Commonwealth government, and it is alleged that the act of the employee which gave rise to the claim was within the scope of the office or duties of the employee, the Commonwealth through the [General Counsel] shall defend the action, unless the [General Counsel] determines that the act did not occur within the scope of the office or duties of the employee. In the latter case, if it is subsequently determined that the act occurred within the scope of the office or duties of the employee, the Commonwealth shall reimburse the employee for the expense of his legal defense in such amounts as shall be determined to be reasonable by the court. If an action is brought against a Commonwealth government employee for damages on account of injury to a person or property and it is not alleged that the act of the employee which gave rise to the claim was within the scope of his office or duties, and he successfully defends the action on the basis that the act was within the scope of his office or duties, and he has given prior notice to the [General Counsel] and the [General Counsel] has refused to defend the action, he shall likewise be entitled to the reasonable expenses of the defense.

2. The standards under which the Commonwealth will provide representation and indemnification to a Commonwealth employee who has been civilly sued in his official or individual capacity are set forth at 4 Pa.Code §§ 39.2 and 39.3. In pertinent part, these sections provide as follows:

    **39.2 Civil cases involving unintentional conduct.**

    When a Commonwealth ... employe[e] is sued in his official or individual capacity for alleged negligence or other unintentional misconduct occurring while in the scope of employment, the Commonwealth will provide a defense in all cases....The Commonwealth will indemnify the defendant for the expense of a judgment against him in this case....

    **39.3 Civil cases involving intentional or malicious conduct.**

    (a) *Good faith in exercise of authority.* Regardless of the allegations made against the defendant, if it appears to the General Counsel or to the General Counsel's designee that the defendant's conduct giving rise to the cause of action was within the scope of his employment and a good faith exercise of his authority, the Commonwealth, or its insurance company if there is coverage, will undertake the defense with an attorney of its choosing at its expense, and will indemnify the defendant for the expense of a judgment against him or a settlement that is approved by the General Counsel or the General Counsel's designee. The defendant may engage his own attorney but indemnification and reimbursement of attorneys fees by the Commonwealth will be in the sole discretion of the General Counsel.

    (b) *Bad faith or malicious conduct, or conduct outside the scope of employment.*

    (1) If the General Counsel or the General Counsel's designee determines that the defendant's conduct was a bad faith exercise of his authority, malicious or outside the scope of his employment, the General Counsel, in his sole discretion, will determine whether the Commonwealth will undertake the defense of the defendant. The Commonwealth will not indemnify the defendant for a judgment against him, and will notify the defendant that he may be subject to personal liability and should engage his own attorney.

the State System of Higher Education to proffer evidence and argument to show that Sergeant Flagg's conduct giving rise to the lawsuit was bad exercise of authority, malicious or outside the scope of his employment." Prior to the hearing, the parties entered the following stipulations of fact:

1. On February 24, 2005, Plaintiff Victor J. Boland, Jr. commenced an action against Thomas Flagg and Cheyney University in the Chester County Court of Common Pleas.

2. On March 30, 2005, the Office of General Counsel declined to defend or indemnify Mr. Flagg as a result of the Boland lawsuit.

3. On April 4, 2005, Mr. Flagg appealed the Office of General Counsel's March 30, 2005 decision.

4. The incident at issue occurred at Reich's Texaco, 1480 West Chester Pike, West Chester, PA.

5. Reich's Texaco is located approximately 3 miles from the campus of Cheyney University.

6. The incident occurred on February 28, 2004.

7. At the time of the incident, Mr. Flagg was working for Cheyney University as a campus police officer.

8. At the time of the incident, Mr. Flagg was working for Cheyney University on a 1500 to 2300 shift.

9. Mr. Flagg has been employed at Cheyney University as a campus police officer since 1990.

10. At the time of the incident, Mr. Flagg was in the Reich's Texaco buying lottery tickets and a newspaper.

11. Mr. Flagg conducted a pat-down search of plaintiff Boland, which found a large bottle of cough-syrup but no weapons.

Flagg stated in his opening statement at his administrative hearing that on February 28, 2004, he left the Cheyney University campus in order to perform a transport assignment to West Chester Pike, located approximately three miles from the campus of Cheyney and adjacent to Reich's Texaco gas station on West Chester Pike, and that his work frequently required this sort of transport assignment. He asserted that it was while he was in transit back to campus after completing the transport that the incident with Boland took place.

When told by the hearing examiner that this statement was only a statement, not evidence, Flagg replied, "Yes." (Reproduced Record at 44). At the conclusion of his opening statement, Flagg was asked whether he wanted to present any testimony on his behalf, to which he replied, "Sure, I can testify to the fact of my opening statement." (Reproduced Record at 45). After being sworn, Flagg's subsequent testimony, while detailing the events leading up to the arrest, made no reference to the asserted transport assignment.

Based on the evidence adduced before the hearing examiner, the General Counsel issued an adjudication denying Flagg's appeal because he was acting outside the scope of his employment as a Cheyney University campus police officer when the incident occurred because he left the campus to go to Reich's Texaco to buy things for himself, and his duties as a Cheyney University police officer did not require him to do so.[3] Accordingly, she held it unnecessary to address whether Flagg acted in bad faith or maliciously when he conducted a pat-down search of Boland.

**3.** The powers and duties of campus police officers are set forth by Section 2416.1 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 175, added by the Act of November 26, 1997, P.L. 530, 71 P.S. § 646.1. Campus police officers under that provision generally have the same power as municipal police officers when acting on campus. Subsection

Flagg subsequently appealed to this Court.[4]

■ Flagg argues that the OGC's determination that he was outside the scope of his employment with SSHE during the incident with Boland was not supported by substantial evidence. He claims the evidence in the form of his sworn testimony, a payroll timesheet and a police report following the incident demonstrated that despite the fact that he was off-campus, he was "on duty" at the time of the incident.[5] The issue in this case, though, is not whether Flagg was "on duty" or "on the payroll" when the incident occurred, but whether he was advancing his employer's interests when he conducted the "pat-down" search of Boland such that he was acting within the scope of his employment.

■ Campus police officers have police powers while on campus, 500 yards from campus, and beyond those territorial limits *where the officer is on official business*

6 of that section gives them powers off campus providing, in relevant part: "Except when acting pursuant to 42 Pa.C.S. Ch. 89 Subch. D, campus police shall exercise these powers and perform these duties only on the grounds or within 500 yards of the grounds of the college or university. For the purposes of applying the provisions of 42 Pa.C.S. Ch. 89 Subch. D, the grounds and within 500 yards of the grounds of the college or university shall constitute the primary jurisdiction of the campus police...."

42 Pa.C.S. Ch. 89 Subch. D provides an exception to the rule limiting the territorial jurisdiction in which an officer can exercise police authority where the officer is on "official business" and views an offense or has probable cause to believe that an offense has been committed. 42 Pa.C.S. § 8953.

4. Our scope of review of a decision by an administrative agency is limited to determining whether constitutional rights are violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Ross v. Department of Public Welfare*, 811 A.2d 1076 (Pa.Cmwlth.2002).

and views an offense or has probable cause to believe that an offense has been committed. Even though a police officer may be "on duty," a police officer may or may not be acting within the scope of his employment when he carries out what would otherwise be a police function. Conduct that occurs when an employee is at his workplace or when a police officer is no longer within his or her territorial limits may or may not be within the scope of his or her employment, depending upon whether the conduct in question was of the kind the employee was required to perform, whether the conduct occurred within authorized time and space limits, and whether the conduct was motivated at least, in part, to serve the employer. *Strickland v. Department of Transportation*, 132 Pa.Cmwlth. 605, 574 A.2d 110 (1990).

In *Commonwealth v. Carlson*, 705 A.2d 468 (Pa.Super.1998), the Superior Court

5. Flagg again asserts that he was acting within the scope of his employment and was on official business when the incident occurred because he was returning from a "transport" which was part of his assigned duties and requiring him to travel outside the Cheyney University campus. Flagg asserts that he acted in accordance with the powers and duties of campus police officers during the incident because 42 Pa.C.S. § 8953(a)(5), which allows those officers to act while on official business, permitted him to act beyond the campus boundaries where he had probable cause to believe Boland's conduct created an immediate clear and present danger. First, there is no evidence in the record to establish that he was returning from transport duty when the incident occurred. Second, even if he was on transport duty when the incident occurred, he was not on official business within the meaning 42 Pa.C.S. § 8953(a)(5). *Commonwealth v. Pratti*, 530 Pa. 256, 608 A.2d 488 (1992); *Commonwealth v. Merchant*, 528 Pa. 161, 595 A.2d 1135 (1991).

addressed whether a statute that limited specialized police officers to arrest only when acting within the "scope of employment" meant that police officers were acting within that scope only when carrying out their primary duties. In that case, a wildlife conservation officer arrested a motorist for DUI. While concluding that the offense of DUI was included among those for which the officer could arrest, citing language from the Pennsylvania Game and Wildlife Code allowing officers to "pursue, apprehend or arrest any individual suspected of any ... offense classified as a misdemeanor or felony," the Superior Court, nonetheless, invalidated the arrest based on language contained in the statute that premised the officer's power to arrest on the requirement that the officer act "within the scope of [his] employment." *Carlson* 705 A.2d at 471. It concluded that the presence of such language focused and limited the officer's authority to that which was "relative to the conduct of specific duties." *Id.*

> Significantly rather than simply imbuing wildlife conservation officers with the power to arrest at any time, the language "when acting within the scope of the officer's employment" was chosen to define when they are permitted to act. Additionally, the legislature did not use broader and more permissive language such as "any time the officer is on duty." Had the legislature used such language, [the officer] likely would have been authorized to effect this arrest because he was on duty at the time he first observed Appellant's driving. However, the statute does not appear to contemplate a wildlife conservation officer pursuing or arresting an individual when

the reasonable suspicion or probable cause to suspect a violation of the law occurs when the officer is acting outside the scope of his primary duties.

*Id.* at 471.

The only evidence of record is that Flagg was on a personal errand when the confrontation with Boland took place that led to the "pat-down" search. That evidence shows that Flagg left campus, drove three miles to a convenience store to buy a newspaper and to play the Pennsylvania Lottery, and after paying for those items, left but returned because the store clerk had not given him the correct change. While he may have been on the payroll, nothing suggests that he was in any way advancing the interest of his employer or carrying out his official duties when he went to the store or that he could exercise any police powers when the incident occurred because his conduct was outside his jurisdictional limits and did not fall within the "official business" exception when the incident occurred.

Accordingly, because there was substantial evidence supporting the General Counsel's determination that Flagg was not within the scope of his employment and not on official business during the incident with Boland, we affirm the General Counsel's adjudication to deny his request for representation.[6]

### *ORDER*

AND NOW, this *26th* day of *July*, 2006, the adjudication and order of the General Counsel, Docket No. 01–2005, is affirmed.

---

6. Flagg also contends that the General Counsel's decision is not in accord within the collective bargaining agreement, and that there was an impermissible commingling of functions because the hearing examiner and the SSHE were both from the General Counsel's office. Aside from the latter being belied by the facts, these issues were not raised below and are, therefore, waived. 2 Pa.C.S. § 1551.