**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David William MUNDORF, Jr.**

Superior Court of Pennsylvania.

Argued March 19, 1997.

Filed Aug. 26, 1997.

─────────

Kevin F. McCarthy, Assistant District Attorney, Pittsburgh, for Commonwealth, Appellant.

Before TAMILIA, FORD ELLIOTT and BROSKY, JJ.

PER CURIAM:

The Commonwealth presents this appeal from the July 23, 1996 Order granting appellee's motion to suppress evidence related to his stop for a traffic offense and subsequent arrest for driving under the influence of alcohol. The facts of this case, which are not in dispute, are set forth by the trial court as follows.

Matthew Porter is a police officer with Allegheny County Port Authority. In that capacity, on October 6, 1995 at 8:50 [p.m.], Porter was proceeding from the Gateway Subway Station in the downtown section in the City of Pittsburgh to the East Liberty Garage. Both the Subway Station and the garage are operated by the Port Authority. Porter was driving along Fifth Avenue on the outbound bus lane used by Port Authority buses when he encountered defendant, in front of him, also driving in the outbound bus lane. At that point, Fifth Avenue is three lanes. In addition to the outbound bus lane, there are two inbound lanes open to regular traffic. Fifth Avenue was built, and is owned and maintained, by the City of Pittsburgh. Officer Porter stopped defendant for driving in a restricted lane, a summary offense in violation of the Vehicle Code, 75 Pa.C.S. 3309. Officer Porter's police report (entered into evidence by way of stipulation at HT–3) in part states:

On the date above, at approximately 8:50 p.m., (I) was on routine patrol when I came across a vehicle PA Reg. ATB 3676

operating in a restricted lane (bus lane). Upon pulling this vehicle over, the car pulled up into the raised sidewalk. After approaching the vehicle, the driver had a difficult time locating his driver and vehicle information. The driver also exhibited stuttered speech, watery bloodshot eyes and an odor of alcoholic beverages.

Officer Porter administered a field sobriety test to defendant and placed him under arrest for Driving Under the Influence of Alcoholic Controlled Substance Supra.

(Slip Op., Dauer, J., 8/29/96, pp. 2–3; citations omitted.)

On March 14, 1996, appellee filed an omnibus pretrial motion to suppress all evidence related to the traffic stop and arrest on the basis that Officer Porter, as a Port Authority Transit (PAT) Officer, exceeded his statutory authority. By Order dated July 23, 1996, the trial court granted appellee's motion and this appeal followed.

 As recognized by the trial court, the Commonwealth and PAT as amicus curiae,[1] our resolution of this case is governed by the Railroad and Street Railway Police Act (Act), 22 Pa.C.S. § § 3301 et seq. Section 3301 is the empowerment provision of the statute and states as follows:

§ 3301. Appointment

A corporation owning or operating a railroad or street passenger railway in this Commonwealth, including also an authority existing pursuant to Article III of the act of January 22, 1968 (P.L. 42, No. 8), known as the "Pennsylvania Urban Mass Transportation Law," for its entire transportation system, and including an authority existing pursuant to the act of April 6, 1956 (1955 P.L. 1414, No. 465), known as the "Second Class County Port Authority Act," may apply to the Commissioner of the Pennsylvania State Police upon such forms as he shall prescribe for the appointment of specific persons as the applicant

─────────

1. Appellee did not file an appellate brief.

may designate to act as railroad or street railway policemen for it. The commissioner, after such investigation as he shall deem necessary, shall recommend to the Governor the commissioning of such persons as railroad or street railway policemen or advise the applicant of their adverse recommendations and the reasons therefor. The Governor, upon such application and recommendation, may appoint such persons to be railroad or street railway policemen, and shall issue to such persons so appointed a commission to act as such policemen.

*Id.* (footnotes omitted). Under section 3303(a), the authority of railway policemen is set forth as follows:

### § 3303. Powers and duties

(a) **General powers.**—Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

2. The arrest powers of Philadelphia police are set forth by the Philadelphia Home Rule Charter, codified at 351 Pa.Code §§ 1.1–100 et seq., which provides in relevant part:

§ 5.5–200. **Functions**
The Police Department shall have the power and its duty shall be to perform the following functions:
(a) *Law Enforcement.* It shall preserve the public peace, prevent and detect crime, police the streets and highways and enforce traffic statutes, ordinances and regulations relating thereto. The Department shall at all times aid in the administration and enforcement within the City of the statutes of the Commonwealth of Pennsylvania and the ordinances of the City.
. . .
§ 5.5–201. **Powers of Policemen.**
The members of the Philadelphia Police shall have all the powers conferred by statute and ordinance upon members of the police force of cities of the first call and upon constables of the Commonwealth of Pennsylvania. They shall have the power to make lawful searches,

Stripped to its essentials, this statute grants general arrest powers, i.e., those of a Philadelphia police officer,[2] under two circumstances: (1) where the railway policeman is on or near corporate authority property; or (2) where the policeman is elsewhere in the state and engaged in the discharge of his duties in pursuit of authority business.

Particularly in light of the apparently broad grant of power under the second scenario, we are simply unable to avoid the conclusion that Officer Porter was discharging his duties in pursuit of PAT business at the time of appellee's arrest. According to the stipulated facts, Officer Porter "was on routine patrol" driving a PAT vehicle from one PAT property to another in a traffic lane reserved exclusively for the use of PAT or emergency vehicles. Although the Act does not define the precise duties to be executed by railway policemen, we note the uncontradicted suppression hearing testimony of Officer Porter that his job was "[t]o make sure the bus lanes are clear of other traffic, to clear the other traffic out of the bus lanes if there is traffic." (N.T., 7/23/96, p. 7.) Officer Porter further testified that stopping vehicles which are driving in the bus lane and issuing

seizures and arrests for violations of any statutes or ordinances in force in the City, to serve subpoenas when ordered so to do by their superior officers, and to do such other acts as may be required of them by statute or ordinance.
**NOTES**
**Sources:** No specific source.
**Purpose:** Specification in detail of the powers of policemen is avoided in favor of a general statement of powers so that no particular power will be excluded because of a failure to refer to it. See Annotation to Section 1–100. Searches, seizures and arrests may be made if they are lawful, a constitutional caution necessary for the police to bear in mind in the exercise of such powers. Police are empowered to make lawful searches, seizures and arrests for the violation of any statutes, State or Federal, in force in the City, and of City ordinances. The powers of the police include all the common law powers of police officers.
The specific power at issue herein, to enforce the traffic laws, is expressly set forth in section 5.5–200, supra.

citations under 75 Pa.C.S. § 3309(3)[3] for driving in a restricted lane are part of his normal duties (N.T. at 8). On these undisputed facts, the conclusion is inescapable that Officer Porter was discharging his official duties at the time of appellee's arrest. Nor can it be doubted that Officer Porter was discharging his duties in pursuit of PAT business. The immediate danger posed to PAT passengers and equipment by those driving in restricted bus lanes is clear. This danger is further compounded where, as here, the unauthorized driver is seriously intoxicated.[4]

In sum, the plain language of section 3303(a) of the Act grants arrest powers where a railway policeman is discharging his duties in pursuit of transit authority business. It is for the legislature, not this Court, to alter the plain meaning of these words if the power of railway policemen is to be circumscribed beyond the current statutory framework.

■ We caution, however, that it is only under facts similar to those in the instant case, *where the officer is on routine patrol and acts to prevent an immediate threat to the welfare of PAT passengers or property,* that we will validate an arrest conducted pursuant to the second provision of section 3303(a). Our decision in no way sanctions the authority of railway officers to engage in the general enforcement of our criminal laws or Motor Vehicle Code. In this regard, we share the concern of the trial court that general police powers "should be exercised only by organized municipal or state police directly under the central authority of elected civilian officers[.]" (Slip Op. at 3.) Indeed, the legislature also was concerned that incompetent or untrained people might be employed to wield the extraordinary powers of police officers. It expressed this concern

by including the following two sections in the Act, both of which seek to formalize and regulate the office:

## § 3302. Oath of Office

Every railroad or street railway policeman so commissioned shall, before entering upon the duties of his office, take and subscribe the oath required by Article VI of the Constitution of Pennsylvania. The oath and commission issued by the Governor shall be recorded in the office of the Secretary of the Commonwealth, in the county where the registered corporate office or principle place of business is located and a copy filed with the commissioner.

. . .

## § 3303. Powers and duties

. . .

**(d) Course of instruction.**—Every railroad and street railway police officer shall successfully complete the same course of instruction required for municipal police officers by the act of June 18, 1974 (P.L. 359, No. 120), referred to as the Municipal Police Education and Training Law.

*Id.* (footnote omitted).

■ Consistent with our admonition that railway police must not engage in general enforcement of the laws, we emphasize that such officers do not possess arrest powers in excess of those set forth in the Act. In this regard, the instant case is distinguishable from *Commonwealth v. Leet,* 537 Pa. 89, 641 A.2d 299 (1994), and *Commonwealth v. Taylor,* 450 Pa.Super. 583, 677 A.2d 846 (1996), in which the Supreme Court and a panel of this Court, respectively, construed the warrantless arrest powers of sheriffs and constables.

---

**3.** 75 Pa.C.S. § 3309(3) provides:

§ 3309. **Driving on roadways laned for traffic**

. . .

**(3) Lanes limited to specific use.**—Official traffic-control devices may be erected to restrict the use of specified lanes to specified

classes or types of traffic or vehicles, including multioccupant vehicles or car pools, and drivers of vehicles shall obey the directions of every such device.

**4.** A breathalyzer test conducted subsequent to appellee's arrest revealed that his blood alcohol content was twice the legal limit.

*Leet* and *Taylor* found that those officers retained all powers which they possessed at common law, except where expressly abrogated by statute. Since street railway police of the type at issue in this case originated with the Act and thus did not exist at common law, their authority must be narrowly confined to the instances contemplated in section 3303(a).

Finally, we note that the record does not disclose whether Officer Porter and the remainder of the PAT police were appointed consistent with the specific procedures outlined in section 3301 of the Act, *supra*. If the trial court on remand should determine that the mandate of section 3301 has not been followed, Officer Porter's appointment is invalid and his arrest of appellee is illegal, unless privileged on some other basis. In light of the absence of record evidence to the contrary, however, we have assumed for purposes of this review that the appointments were valid.

Based on the foregoing, we find that Officer Porter was properly discharging his duties in pursuit of PAT business at the time of appellee's arrest. Suppression should not have been granted and we are compelled to reverse the Order of July 23, 1996.

Order reversed; case remanded for proceedings consistent with this Opinion.

Jurisdiction relinquished.