**COMMONWEALTH of Pennsylvania, Appellant**

v.

**David Allen FIRMAN, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 5, 2001.

Filed Dec. 31, 2001.

Kevin McCarthy, Asst. Dist. Atty., Pittsburgh, for the Com., appellant.

Bryan S. Neft, Pittsburgh, for appellee.

Albert G. Feczko, Pittsburgh, amicus curiae.

Before: DEL SOLE, President Judge, McEWEN, President Judge Emeritus, JOHNSON, FORD ELLIOTT, EAKIN, JOYCE, STEVENS, MUSMANNO and ORIE MELVIN, JJ.

STEVENS, J.:

■ ¶ 1 The Commonwealth appeals the trial court's order suppressing the evidence seized by an Allegheny County Port Authority Transit (PAT) Officer following the warrantless arrest of Appellee for violating the motor vehicle code. The suppression court determined that the PAT officer did not have jurisdiction to arrest Appellee and suppressed the evidence. In so ruling, the suppression court relied primarily on this Court's decision in *Commonwealth v. Mundorf,* 699 A.2d 1299 (Pa.Super.1997) (*per curiam*). On appeal, the Commonwealth argues that the PAT officer was empowered to arrest Appellee, that the suppression court erred in relying on the dicta found in *Mundorf,* and that the suppression court erred in suppressing the evidence.[1] We reverse and remand for proceedings consistent with this Opinion.

■ ¶ 2 When we review the Commonwealth's appeal from the decision of a suppression court, "[we] consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted."

*Commonwealth v. Nester,* 551 Pa. 157, 160, 709 A.2d 879, 880–881 (1998). "When the evidence supports the suppression court's findings of fact . . ., this Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Valentin,* 748 A.2d 711, 713 (Pa.Super.2000).

¶ 3 The record reveals the following: On July 24, 1999, at approximately 2:50 a.m., PAT Officer Matthew Porter was on duty and traveling in a marked vehicle from the Port Authority station to the West Busway in order to patrol the Port Authority's new right-of-way. N.T. 2/16/00 at 2–3, 5. The Port Authority operates both the station and the West Bus-way. While approaching the ramp to the Fort Pitt Bridge, PAT Officer Porter encountered Appellee's vehicle. N.T. 2/16/00 at 3. As traffic was merging, Appellee swerved and nearly hit PAT Officer Porter's vehicle. N.T. 2/16/00 at 3. After the near collision, Appellee traveled across the bridge at a high rate of speed, crossing from lane to lane, and entered the Fort Pitt tunnel. N.T. 2/16/00 at 3. After exiting the tunnel, Appellee was forced to slow down because of traffic, and PAT Officer Porter stopped Appellee's vehicle. N.T. 2/16/00 at 4. While Appellee was performing a field sobriety test, state police officers stopped to assist PAT Officer Porter, but such assistance was declined. N.T. 2/16/00 at 7. Once it was determined that Appellee failed the sobriety tests, Appellee was transported by PAT Officer Porter to a Pittsburgh Police Station,[2] where a breath intoxilyzer test was administered. The

---

1. The Commonwealth has certified that the suppression court's order substantially handicaps and/or effectively terminates the prosecution of Appellee. This permits appellate review of the suppression order. *See Com-*

*monwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

2. We note that 23 Pa.C.S.A. § 3303(b) indicates that "[t]he keepers of jails and other places of detention in any county of this Com-

first breath intoxilyzer test registered .193% and the second test registered .211%, and, therefore, Appellee was charged with driving while under the influence of alcohol.

¶ 4 On December 10, 1999, Appellee filed a motion seeking to suppress the physical evidence. Specifically, Appellee alleged that PAT Officer Porter did not have statutory authority to arrest Appellee under *Mundorf, supra,* and *Commonwealth v. Carlson,* 705 A.2d 468 (Pa.Super.1998).[3] Following a hearing, the suppression court granted Appellee's motion to suppress, concluding that PAT Officer Porter exceeded his statutory authority. The Commonwealth filed a timely appeal to this Court, and the matter was originally assigned to a three-judge panel of this Court for disposition; however, this Court *sua sponte* referred this case for *en banc* review.

¶ 5 Our resolution of this case is governed, in part, by the Railroad and Street Railway Police Act (Act), 22 Pa.C.S.A. §§ 3301–3305, which provides the following:

### § 3301. Appointment.

A corporation owning or operating a railroad or street passenger railway in this Commonwealth, including also an authority existing pursuant to Article III of the act of January 22, 1968 (P.L. 42, No. 8), known as the "Pennsylvania Urban Mass Transportation Law," for its entire transportation system, and including an authority existing pursuant to the act of April 6, 1956 (1955 P.L. 1414,

No. 465), known as the "Second Class County Port Authority Act," may apply to the Commissioner of the Pennsylvania State Police upon such forms as he shall prescribe for the appointment of specific persons as the applicant may designate to act as railroad or street railway policemen for it. The commissioner, after such investigation as he shall deem necessary, shall recommend to the Governor the commissioning of such persons as railroad or street railway policemen or advise the applicant of their adverse recommendations and the reasons therefor. The Governor, upon such application and recommendation, may appoint such persons to be railroad or street railway policemen, and shall issue to such persons so appointed a commission to act as such policemen.

*Id.* (footnotes omitted). Under Section 3303(a), the authority of railway policemen is set forth as follows:

### § 3303. Powers and duties.

(a) General powers.—Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia,[4] in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth while engaged in the discharge of their duties in pursuit of railroad, street railway or transportation system business.

¶ 6 In *Commonwealth v. Mundorf,* 699 A.2d 1299, 1301 (Pa.Super.1997) (*per cu-*

---

monwealth shall receive all persons arrested by railroad or street railway policemen for purposes of detention until they are dealt with according to law."

**3.** Appellee did not allege that PAT Officer Porter did not have probable cause to stop Appellee's vehicle.

**4.** As indicated *infra,* a panel of this Court has interpreted Section 3303(a) to mean that the statute grants general arrest powers, like those of a Philadelphia police officer, to all officers commissioned under Section 3301, including those located primarily in Allegheny County. *See Commonwealth v. Mundorf,* 699 A.2d 1299 (Pa.Super.1997).

*riam*), a three-judge panel of this Court considered the legality of an Allegheny County PAT Officer's action under Sections 3301 and 3303. In that case, the PAT officer was on routine patrol and driving from one PAT property to another in a traffic lane reserved exclusively for the use of PAT or emergency vehicles. *Id.* at 1301. The PAT officer observed the defendant driving in the restricted lane, and, therefore, he stopped the defendant's vehicle. *Id.* at 1300. After approaching the defendant, the PAT officer concluded that the defendant was intoxicated, and, thus, he arrested the defendant.

¶ 7 With regard to Sections 3301 and 3303, the *Mundorf* panel concluded the following:

> Stripped to its essentials, th[e] statute grants general arrest powers, i.e., those of a Philadelphia police officer,[5] under two circumstances: (1) where the railway policeman is on or near corporate authority property; or (2) where the policeman is elsewhere in the state and engaged in the discharge of his duties in pursuit of authority business.[6]

(footnote omitted).

¶ 8 The panel concluded that the PAT officer had the authority to stop and arrest the defendant since, at all relevant times, the officer was engaged in the discharge of his duties in pursuit of authority business.

The *Mundorf* panel specifically stated the following:

> In sum, the plain language of Section 3303(a) of the Act grants arrest powers where a railway policeman is discharging his duties in pursuit of transit authority business. It is for the legislature, not this Court, to alter the plain meaning of these words if the power of railway policemen is to be circumscribed beyond the current statutory framework.
>
> We caution, however, that it is only under facts similar to those in the instant case, *where the officer is on routine patrol and acts to prevent an immediate threat to the welfare of PAT passengers or property*, that we will validate an arrest conducted pursuant to the second provision of Section 3303(a). Our decision in no way sanctions the authority of railway officers to engage in the general enforcement of our criminal laws or Motor Vehicle Code.

*Mundorf,* 699 A.2d at 1302 (emphasis in original).

¶ 9 In the case *sub judice*, the suppression court reviewed the Act and *Mundorf,* and concluded that PAT Officer Porter did not have statutory authority to arrest Appellee. Specifically, the suppression court stated the following:

> Th[e] statute has been strictly interpreted by the Superior Court, which has

---

**5.** The arrest powers of Philadelphia police was set forth in *Mundorf,* 699 A.2d at 1301 n. 2.:

> The Police Department shall have the power and its duty shall be to perform the following functions:
> (a) Law Enforcement. It shall preserve the public peace, prevent and detect crime, police the streets and highways and enforce traffic statutes, ordinances and regulations relating thereto. The Department shall at all times aid in the administration and enforcement within the City of the statutes of

the Commonwealth of Pennsylvania and the ordinances of the City.

**6.** As the Pennsylvania Supreme Court indicated in *McKinley v. Commonwealth,* 564 Pa. 565, 580 n. 13, 769 A.2d 1153, 1162 n. 13 (2001), the legislature has expressly stated when it desires officers to have concurrent authority with municipal police officers. Additionally, in such circumstances, the legislature has frequently required, as with PAT officers, that the officers undergo the same intensive training as municipal officers. *See Id.;* 22 Pa.C.S.A. § 3303(d).

greatly limited the authority of [PAT] officers to perform their duties away from the property of the authority for which they work.... In *Mundorf,* the court upheld the authority of a PAT officer to stop and make an arrest when the vehicle was traveling in a bus lane within the City of Pittsburgh.

The officer in this case, however, was not on or near Port Authority property. He was not "act[ing] to prevent an immediate threat to the welfare of PAT passengers or property." This Court ha[s] no choice, given the statute and the limiting interpretation of that statute by the Superior Court in *Mundorf,* but to grant the defendant's Motion.

Trial Court Opinion dated 11/27/00 at 3–4.

■ ¶ 10 We conclude that, under Section 3303(a), PAT Officer Porter was engaged in the discharge of his duties in pursuit of railroad, street railway, or transportation system business when he arrested Appellee.[7] According to the undisputed testimony, PAT Officer Porter was on routine patrol driving in a PAT vehicle from one PAT property to another when he observed Appellee nearly collide with his PAT vehicle. While the Act does not define the precise duties to be executed by railway policemen, the uncontradicted suppression hearing testimony of PAT Officer Porter was that his job included

patrolling PAT property, and he was required to drive from the PAT station to other PAT properties in order to achieve this goal. N.T. 2/16/00 at 3. Since PAT Officer Porter observed Appellee's vehicle while he was properly driving from one PAT property to another, we find that PAT Officer Porter had statutory authority to arrest Appellee under Section 3303(a).

¶ 11 To the extent the dicta [8] in *Mundorf* holds otherwise, we overrule it. *See Dole v. City of Philadelphia,* 337 Pa. 375, 11 A.2d 163 (1940) (holding that appellate court may overrule its own dicta). In *Mundorf,* the panel indicated that a PAT officer, who is not on or near corporate authority property, may arrest while engaged in the discharge of his duties only if the officer is acting "to prevent an immediate threat to the welfare of PAT passengers or property." We find no such restriction in the Act. While a plain reading of the Act mandates that PAT officers must be engaged in the discharge of their duties in pursuit of railroad, railway, or transportation system business in order to arrest, 23 Pa.C.S.A. § 3303(a), the Act does not include a mandate that the officer must be acting to prevent an immediate threat to PAT passengers or property.[9] Since the legislature did not include such language in the Act, we decline to read it as such. 1 Pa.C.S.A. § 1921(b) ("When

---

7. It is undisputed that Appellee was not arrested on or near corporate authority property.

8. "Dicta" is defined as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court. Expressions in court's opinion which go beyond the facts before [the] court and therefore are individual views of [the] author of [the] opinion and not binding in subsequent cases as legal precedent." Black's Law Dictionary 454 (6th ed.1990).

9. Once it is found that a PAT officer was discharging his duties in pursuit of PAT busi-

ness, there is no doubt that a PAT officer can arrest a driver for driving while under the influence of alcohol. *See* 22 Pa.C.S.A. § 3303(a) (indicating that PAT officers have the same power as, for example, Philadelphia policemen); 22 Pa.C.S.A. § 3303(d) (indicating that every railroad and street railway police officer shall complete the same instruction required for municipal police officers). Appellee has not challenged whether PAT Officer Porter successfully completed the instruction necessary in this case, and, therefore, any challenge thereto is waived.

the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). As the *Mundorf* panel admitted, the Act does not define the precise duties to be executed by railway policemen. As such, we decline to limit such duties to the "prevention of immediate harm to PAT passengers and property."

¶ 12 In addition, the dicta found in *Mundorf* is contrary to our decisions in *Commonwealth v. Carlson*, 705 A.2d 468 (Pa.Super.1998), and *Commonwealth v. Schatzel*, 724 A.2d 362 (Pa.Super.1998), both of which involved the arrest powers of wildlife conservation officers. In *Carlson*, 705 A.2d at 472, a three-judge panel of this Court held that "[t]he statutory grant of arrest powers to wildlife conservation officers is analogous to that of railroad and street railway police."

¶ 13 In *Carlson*, a wildlife conservation officer was transporting a deer carcass to the game lands building, when he observed a driver cross the centerline. When the officer reached the entrance of the game lands building, he decided to follow the appellant's vehicle and did not immediately deliver the carcass.[10] Observing further motor vehicle code violations, the officer stopped the appellant's vehicle and arrested him for driving while under the influence. A three-judge panel of this Court concluded that the statute pertaining to wildlife conservation officers permits a wildlife conservation officer to arrest for motor vehicle violations if such violations occur while the officer is acting within the scope of his duties. Once the officer passed his destination, the officer was no longer acting within the scope of his duties and he could not arrest the appellant.

¶ 14 In *Schatzel*, a wildlife conservation officer was en route to an official call when he observed the appellant's truck parked illegally on the road. The officer stopped and determined that the appellant was driving while under the influence. A three-judge panel of this Court determined that the officer was acting within the scope of his duty when he encountered the appellant while en route to an official call, and, therefore, the officer had statutory authority to arrest the appellant.

∎ ¶ 15 In both *Carlson* and *Schatzel*, the determining factor was whether the wildlife conservation officer was en route to his intended official destination, and thus acting within the scope of his employment, when he arrested the appellant. Likewise, with regard to PAT officers, who have similar statutory authority, we conclude that officers who observe violations of Pennsylvania's criminal or motor vehicle laws while traveling en route to their intended destination may make an arrest for such violations.

¶ 16 In summary, where a PAT officer is properly traveling from one PAT property to another, in pursuit of railroad, railway, or transportation business, the officer has statutory authority to arrest under our criminal and motor vehicle laws. That is, for Section 3303(a) purposes, a PAT officer is engaged in the discharge of PAT business when he is traveling from one PAT property to another while on official business. There is no requirement of "an immediate threat to the welfare of PAT passengers or property" in the statute discussed *supra*. Such a requirement would unduly constrain the authority conferred by the legislature upon PAT officers in this Commonwealth. As such, the sup-

---

**10.** In *Carlson,* the officer did not have probable cause to stop Appellee's vehicle prior to reaching the game lands exit.

pression court erred in granting Appellee's motion to suppress in this case.

¶ 17 Reversed; Remanded for further proceedings; Jurisdiction Relinquished.

¶ 18 JOHNSON, J. files a Dissenting Opinion in which MUSMANNO, J. joins.

JOHNSON, J., dissenting.

¶ 1 I respectfully dissent. The Majority holds that "where a [Port Authority] officer is properly traveling from one PAT property to another, in pursuit of railroad, railway, or transportation business, the officer has statutory authority to arrest under our criminal and motor vehicle laws." Majority Slip Op. at 10–11. In my opinion, this pronouncement ignores plain language in the Railroad and Street Police Act (the Act) that limits the circumstances under which a Port Authority officer may conduct an arrest, and as a result, invests Port Authority officers with powers denied by the legislature. Because the trial court interpreted the powers of the Port Authority police in accordance with the limitations mandated by the Act, I would affirm the court's order granting suppression of the evidence.

¶ 2 Judicial review of statutory enactments is governed, fundamentally, by the Statutory Construction Act, 1 Pa.C.S. §§ 1901–1991. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. *Every statute shall be construed, if possible, to give effect to all its provisions.*" 1 Pa.C.S. § 1921(a) (emphasis added). In the Railroad and Street Police Act, 22 Pa.C.S. §§ 3301–3305, the General Assembly included a provision that quite deliberately limits the legal capacity of a Port Authority officer to conduct an arrest off Port Authority property. *See* 22 Pa.C.S. § 3303(a). That provision, section 3303(a) contains language largely ignored by the Majority that condi-

tions a Port Authority officer's exercise of police powers on the nature of the duties to which he applies them. Section 3303(a) states the following:

**§ 3303. Powers and duties**

(a) **General powers.**—Railroad and street railway policemen shall severally possess and exercise all the powers of a police officer in the City of Philadelphia, in and upon, and in the immediate and adjacent vicinity of, the property of the corporate authority or elsewhere within this Commonwealth *while engaged in the discharge of their duties* in pursuit of railroad, street railway or transportation system business.

22 Pa.C.S. § 3303 (emphasis added).

¶ 3 Section 3303(a), *when considered in its entirety* and interpreted in accordance with the plain meaning of the language, can be read only as a specific limitation of the powers accorded by the legislature to Port Authority officers. The phrase "while engaged in the discharge of their duties," critical to any consideration of this section, recognizes that an officer's discharge of specific duties consistent with the business of the Port Authority is a prerequisite to his exercise of any of the powers otherwise provided by the Act. This conditional nature of the officer's powers is established by the legislature's use of the conjunction "while" in relation to the noun "discharge." *See* WEBSTER'S NEW COLLEGIATE DICTIONARY 1325 (1979) (defining the conjunction "while" as "during the time that," and the noun "discharge" as "the act of removing an obligation or liability"). The plain meaning of these two words allows a Port Authority officer to exercise lawful powers *during the time that* he *acts to remove the obligation or liability* imposed by his duties. By virtue of the same language,

the Act establishes that if the officer's conduct is not motivated by the need to remove his obligation to the Port Authority or is not carried out during the appropriate timeframe, it is not in accordance with the Railroad and Street Police Act.

¶ 4 The scope of the obligation in the discharge of which a Port Authority officer may exercise the authority provided by the Act is described by section 3303(a) as merely "duties in pursuit of [Port Authority] business." Although this provision provides no precise definition for "duties," it makes readily apparent a limitation in scope. The duties of the officer are, perforce, limited by the business of the Port Authority itself.

¶ 5 The nature of Port Authority "business," in pursuit of which the officer's powers must be exercised, is well defined by the Second Class County Port Authority Act, 55 P.S. §§ 551–563.5. The act describes, with exhaustive care, the "rights or powers" of the Port Authority, including specifically the manner of "business" in which it may engage. *See* 55 P.S. § 553. In none of section 553's twenty-seven subsections, has the legislature vested the Authority with the power to patrol public roadways not operated as high occupancy vehicle lanes. Indeed, even the Port Authority's *use* of such lanes for purposes of mass transit is subject to prior approval by county government. *See* 55 P.S. §§ 553(20), 563.1. Although section 553(15) provides the Port Authority with discretion "[t]o do all acts and things necessary for ... the general welfare of the authority to carry out the powers granted to it by this act or any other acts[,]" 55 P.S. § 553(15), neither this section nor the provisions of the Railway and Street Police Act suggest that the Port Authority's exercise of police powers on public roadways is "necessary." Indeed, without some demonstrated relationship between the exercise of such expansive powers and the welfare of the Port Authority, I find it pointedly unnecessary.

¶ 6 This very point is implicit in our decision in *Commonwealth v. Mundorf. See* 699 A.2d 1299, 1301 (Pa.Super.1997). In *Mundorf,* we concluded that a cognizable "discharge of duty" should allow PAT officers to exercise their powers only "to prevent an immediate threat to the welfare of PAT passengers or property." *See id.* Although the language the Court used in *Mundorf* is not included on the face of the Act, it recognizes inherently that the only duties subject to discharge by a Port Authority officer are those "necessary" to the welfare of the Authority and the passengers with whose welfare the Authority is charged. *Id.* at 1302 ("[I]t is only under facts similar to those in the instant case, *where the officer is on routine patrol and acts to prevent an immediate threat to the welfare of PAT passengers and property,* that we will validate an arrest conducted pursuant to the second provision of section 3303(a).").

¶ 7 Notwithstanding the evident care and restraint the Court exercised in *Mundorf,* the Majority disavows its rationale in what I can only conclude is unfettered zeal to avoid a "bad result" in the case before us. Seeking to circumvent the potential that one who breaks the law might not be punished, *the Majority circumvents the law,* disregarding limitations on the powers of the Port Authority's officers mandated by the limited "rights and powers" of the Port Authority itself. *See* 55 P.S. § 553. Its holding, that the arresting officer's mere presence on a public roadway while driving between two Port Authority properties miles apart is a sufficient basis upon which to validate his exercise of arrest powers, is grievously overbroad. In my opinion, such a holding is tantamount to investiture of arrest powers in the Port

Authority to act virtually anywhere in Allegheny County without regard to the specific purpose for which any given arrest is to be made. Such a grant of authority is neither sanctioned nor suggested by the language of the Railway and Street Police Act. Unless "[Port Authority] business" may be held to include general patrol of public roadways, which the record in this case clearly contravenes, the Majority's holding is without support in the enabling legislation and I conclude, infirm. N.T. Suppression Motion, 2/16/00, at 6 (testimony of arresting officer that he does not have authority generally to enforce provisions of Motor Vehicle Code on public roadways).

¶ 8 Moreover, the Majority's investiture of such wide ranging powers in a "special" police force like that of the Port Authority is pointedly inconsistent with our interpretation of enabling legislation empowering similar law enforcement bodies. In *Commonwealth v. Carlson*, 705 A.2d 468, 471 (Pa.Super.1998), upon which the Majority relies for support, we recognized the paramount importance of "scope of employment" language used by the General Assembly to constrain the powers of wildlife conservation officers. *See* 705 A.2d 468, 471 (Pa.Super.1998). In that case, an officer arrested a motorist, as in this case, for DUI. *See id.* at 468. We concluded that the offense of DUI was included amongst those for which the officer could arrest, citing language from the Pennsylvania Game and Wildlife Code allowing officers to "pursue, apprehend or arrest any individual suspected of any ... offense classified as a misdemeanor or felony." *See id.* at 469 (quoting 34 Pa.C.S. 901(a)). Nonetheless, we invalidated the arrest in *Carlson* based on language in the Code that premised the officer's power to arrest on the requirement that the officer act "within the scope of [his] employment." *See id.* We concluded that the presence of such

language focused and limited the officer's authority relative to the conduct of *specific duties.*

Significantly rather than simply imbuing wildlife conservation officers with the power to arrest at any time, the language "when acting within the scope of the officer's employment" was chosen to define when they are permitted to act. Additionally, the legislature did not use broader and more permissive language such as "any time the officer is on duty." Had the legislature used such language, [the officer] likely would have been authorized to effect this arrest because he was on duty at the time he first observed Appellant's driving. However, the statute does not appear to contemplate a wildlife conservation officer pursuing or arresting an individual when the reasonable suspicion or probable cause to suspect a violation of the law occurs when the officer is acting outside the scope of his primary duties.

\* \* \* \*

Section 901 indicates that the primary duty of a wildlife conservation officer is to enforce the Game and Wildlife Code. No provision within the Game and Wildlife Code would require a wildlife conservation officer to generally patrol the highways and byways of this Commonwealth to enforce our criminal laws and Vehicle Code. Indeed, if the scope of a wildlife conservation officer's employment encompassed such a duty, then the limiting language of subsection 901(a)(17) would be superfluous.

*Id.* at 471, 472.

¶ 9 Significantly, we found the provision of the Game and Wildlife Code at issue in *Carlson* analogous to the "discharge of duties" language of the Railway and Street Police Act at issue here. *See id.* at 472. Because the officer in *Carlson* was not

engaged in the discharge of his specific obligation to the Game Commission when he effected the arrest, we concluded that he acted outside his legal authority and ordered suppression of evidence of intoxication gathered by way of the arrest. *See id.* at 473.

¶ 10 I can only conclude that the same result, solidly premised on the "discharge of duties" language of the Act, is properly mandated in the case before us. As in *Carlson,* the Act provides no allowance for Port Authority officers to "generally patrol the highways and byways of this Commonwealth to enforce our criminal laws and Vehicle Code." *Id.* The Majority's apparent insertion of such powers finds no support in the language of the legislature and, in point of fact, renders the "discharge of duties" language superfluous. Because the Majority declines to apply the Act with specific recognition of this language, I find its disposition untenable. Accordingly, I respectfully dissent.