J-S15009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMAL GREEN, | |
| Appellant | No. 745 EDA 2014 |

Appeal from the Judgment of Sentence February 26, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009471-2012

BEFORE:  BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:               **FILED MARCH 03, 2016**

Appellant, Jamal Green, appeals from the judgment of sentence of 3-6 years' incarceration, and a consecutive 6-year term of probation, imposed following his conviction for gun and drug offenses.  Appellant's sole issue on appeal is whether the trial court erred in denying his motion to suppress the contraband discovered in the backpack he was wearing when he was arrested.  Appellant claims the search of his backpack was unlawful because the police did not first obtain a warrant, whereas the trial court found that the search was lawful pursuant to the search-incident-to-arrest exception to the warrant requirement.  After careful review, we affirm.

The trial court summarized the pertinent facts of this case as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

At the [suppression] motion hearing, the Commonwealth presented the testimony of Philadelphia Police Officers Brian Geer and Frederick Clough[,] while [Appellant] presented the testimony of Barbara Brown. Testimony established the following.

On September 19, 2012, at approximately 3:56 pm, police officers Geer and Clough were on uniform bike patrol in the area of Chew and Chelten in Philadelphia [C]ounty. The officers observed Lauren Greenburg (a/k/a Grouper), a known drug user and prostitute, wandering around for several minutes. When [Appellant] approached the area, Ms. Greenburg immediately walked over to him and they briefly conversed before entering the laundro[ma]t at 737 Chelten. [Appellant] was carrying a backpack on his person[,] however[,] neither he nor Ms. Grouper had any laundry when they entered the laundromat. Officer Geer rode to the laundromat and observed Ms. Greenburg accept a small object from [Appellant,] which she placed in her right front pocket. Officer Geer entered the laundromat and ordered both [Appellant] and Ms. Greenburg to stop; [Appellant], however, disregarded the command and walked away. When Officer Geer repeated his command, [Appellant] ran toward the back of the laundromat where he tried to enter the manager's office. [Appellant] turned toward Officer Geer with his hands behind his back. [Appellant] did not comply with Officer Geer's command to take his hands from behind his back. Officer Clough, who entered the laundromat shortly after Officer Geer, assisted Officer Geer in securing and handcuffing [Appellant].

Officer Geer then exited the laundromat and pursued Ms. Greenburg. In pursuit, Officer Geer observed her remove an unknown object from her right pocket and put it into her mouth. Officer Geer caught up to and struggled with Ms. Greenburg and she swallowed the object. Officer Clough searched the front part of [Appellant]'s book bag, which contained marijuana. Officer Hart who arrived at the laundromat approximately two minutes after Officers Geer and Clough, recovered a semi-automatic weapon, a digital scale, and two criminal law books from the book bag. Recovered from [Appellant]'s right front pants pocket was United States currency.

Trial Court Opinion (TCO), 4/8/15, at 2-3.

Appellant's suppression motion was denied by the trial court on April 2, 2013, following a hearing. Following his non-jury trial held on February 26, 2014, Appellant was convicted of possession with intent to deliver, 35 P.S. § 780-113(a)(30), and person not to possess a firearm, 18 Pa.C.S. § 6105. Appellant was sentenced that same day to 3-6 years' incarceration for the gun offense, and to a consecutive term of 6 years' probation for the drug offense.

Appellant filed a timely appeal. He filed a timely, court-ordered Pa.R.A.P. 1925(b) statement on September 24, 2014. The trial court issued its Rule 1925(a) opinion on April 8, 2015. Appellant now presents the following question for our review:

> Did not the lower court err in denying [Appellant]'s motion to suppress evidence in that, after [Appellant] was detained and arrested, [his] backpack was opened and searched without a warrant or any exception to the warrant requirement?

Appellant's Brief, at 3.

Our standard of review of a denial of a motion to suppress evidence is well-settled.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's

- 3 -

legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

The matter before us concerns the search-incident-to-arrest exception to the prohibition against unreasonable searches provided by both the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. "[F]or a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search. This general rule is subject to only a few delineated exceptions[.]" ***Commonwealth v. Gary***, 91 A.3d 102, 107 (Pa. 2014) (plurality).

A search conducted incident to arrest is one of these exceptions:

Under the Fourth and Fourteenth Amendments, an arresting officer may, without a warrant search a person validly arrested. The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search.

***Michigan v. DeFillippo***, 443 U.S. 31, 35 (1979) (internal citations omitted). Furthermore,

[t]he Supreme Court of the United States and [the Pennsylvania Supreme] Court have held that the scope of a

search incident to arrest extends not only to the arrestee's person, but also into the area within the arrestee's immediate control. While the breadth of the area that falls within the arrestee's immediate control has been the subject of much debate, a warrantless search must be strictly circumscribed by the exigencies which justify its initiation. The two historical rationales for the search incident to arrest exception to the warrant requirement are (1) the need to disarm the suspect in order to take him into custody and (2) the need to preserve evidence for later use at trial.

*Commonwealth v. Taylor*, 771 A.2d 1261, 1271 (Pa. 2001) (internal citations, quotation marks, and footnote omitted).

The pertinent facts concerning the search incident to Appellant's arrest are not in dispute. The Commonwealth does not contest that Appellant was already under arrest when his backpack was searched. Thus, there can be no serious claim that the search was conducted for the purpose of ensuring the officers' safety, as Appellant could not access the bag once restrained. Additionally, Appellant does not contest the legality of his arrest, and he admits that he was wearing the at-issue backpack when he was arrested.

Appellant claims, however, that:

Where [Appellant] was handcuffed and in the custody of several police officers, and where [his] backpack was then taken from his person, it was incumbent upon the police to obtain a search warrant before searching the backpack. Under these circumstances, where [Appellant] no longer had access to the backpack at the time it was searched, the warrantless search of the backpack could not be justified as a search pursuant to arrest. Nor were exigent circumstances presented, or any other exception to the warrant requirement demonstrated, by the Commonwealth to justify the warrantless search of the backpack. Consequently, the contents of the backpack should have been suppressed.

Appellant's Brief, at 9-10.

In support of this claim, Appellant cites and discusses **Commonwealth v. Zock**, 454 A.2d 35 (Pa. Super. 1982), **Commonwealth v. Martin**, 626 A.2d 556 (Pa. 1993), and **Commonwealth v. Taylor**, 771 A.2d 1261 (Pa. 2001). The Commonwealth contends that each of these cases is inapposite or readily distinguishable from the facts in this case. We agree with the Commonwealth.

In **Zock**, police were serving an arrest warrant on William Jackson at Jackson's residence. Upon their arrival, they observed Zock "walking rapidly into Jackson's residence." **Zock**, 454 A.2d at 36. Another individual answered the door, claimed to be in charge of the residence in Jackson's absence, and permitted police to enter in order to search for him. Once inside, police discovered approximately twenty-two pounds of marijuana in plain sight. Police then secured the premises while they awaited the arrival of a search warrant.

Subsequently, police observed Zock running away from the house with three suitcases that the police had seen in the room where the marijuana was discovered. Police gave chase, but when they captured Zock, he no longer had the suitcases in his possession. However, the suitcases were later found in a building located along the path of Zock's escape. The suitcases were returned to Jackson's residence, where they were opened when the search warrant arrived, revealing several additional pounds of marijuana.

The trial court ultimately found that the suitcases had been seized unlawfully, because they were outside the scope of the warrant, and because no exigency existed. The Commonwealth appealed, arguing, *inter alia*, that the suitcases were lawfully seized incident to Zock's arrest. This Court ostensibly rejected that argument, "in light of the general rule that luggage lawfully seized during an arrest, and thereafter placed wholly within police control can be searched only after a warrant is obtained." *Id.* at 37 (citing *United States v. Ross*, 456 U.S. 798 (1982)). However, the *Zock* Court ultimately reversed the order granting suppression, accepting an alternative argument that the suitcases were within the scope of the warrant obtained to search Jackson's house.

In the instant case, the Commonwealth argues that the *Zock* Court's apparent ruling on the search-incident-to-arrest issues was mere dicta, given that it was not critical to the actual holding of the Court in reversing suppression. We agree. As we noted in *Commonwealth v. Firman*, 789 A.2d 297 (Pa. Super. 2001):

> "Dicta" is defined as "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court. Expressions in court's opinion which go beyond the facts before [the] court and therefore are individual views of [the] author of [the] opinion and [are] not binding in subsequent cases as legal precedent." Black's Law Dictionary 454 (6th ed. 1990).

*Id.* at 301 n.8.

Clearly, because the *Zock* decision ultimately reversed suppression, the Court's rejection of the Commonwealth's search-incident-to-arrest

argument did not result in binding precedent. Thus, we agree with the Commonwealth that **Zock** is not controlling in this case.

Nevertheless, **Zock** is also factually inapposite given that Zock was not arrested with the suitcases in his possession—they were found in a building, and Zock was arrested outside that building. Moreover, the **Ross** decision, the keystone of the **Zock** Court's search-incident-to-arrest discussion, concerned the scope of the automobile exception to the warrant requirement. In that regard, Appellant's case falls into an entirely different category of Fourth Amendment jurisprudence, given that his backpack was not seized as a result of a search of a vehicle; Appellant was wearing the backpack at issue when arrested. Accordingly, we find Appellant's reliance on **Zock** is unpersuasive, dicta or not.

Next, in **Martin**, police observed Martin and another man passing a satchel back and forth at a table in a restaurant in what appeared to be a drug deal. Martin was stopped by police as he left the restaurant while wearing that satchel. He was told to place the satchel on the ground, at which point a drug dog was permitted to examine it. "The dog indicated to its handler that the satchel contained drugs. Thereupon, one of the detectives opened the satchel and found a small quantity of marijuana, an address book, and $70,500 in consecutively numbered $100 bills. Martin was then arrested." **Martin**, 626 A.2d at 558-59. Martin was convicted following the trial court's denial of his motion to suppress the evidence uncovered by the search of his satchel. This Court affirmed, reasoning that:

> [T]he canine sniff was supported by "reasonable suspicion" that a crime was in progress …. The court also held that the search of the bag was lawful because the cumulative observations of the detectives in the restaurant and the canine alert established probable cause to believe that drugs would be found in the satchel. The search was properly conducted without a warrant, according to the trial court, because it was conducted incident to a lawful arrest and exigent circumstances existed.

*Commonwealth v. Martin*, 626 A.2d 556, 559 (Pa. 1993) (explaining the decision of the Superior Court).

However, the Pennsylvania Supreme Court rejected this Court's analysis, stating:

> Because the search in this case involved Martin's person, we believe that in addition to being lawfully in place at the time of the search, the police must have probable cause to believe that a canine search of a person will produce contraband or evidence of a crime. Reasonable suspicion of criminal activity will not suffice. Moreover, because the intrusion concerns the person, we also hold that once the police have probable cause and a sniff search has been conducted pursuant to that probable cause, before any search, beyond that permitted by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)[,] may be conducted (patting down outer garments to check for weapons upon reasonable suspicion that the suspect may be armed), the police must secure a search warrant and they may detain the suspect for a reasonable time while the warrant is sought.

*Martin*, 626 A.2d at 560-61 (footnotes omitted).

While favorable to Appellant's claim at first glance, further inspection and analysis demonstrates that *Martin* is inapplicable to the circumstances before us. *Martin* clearly holds that a warrant is required when probable cause exists for a search but no exigent circumstances justify dispensing with that requirement. However, in *Martin*, the Pennsylvania Supreme Court was operating under the presumption that, while there was probable

cause to search Martin's satchel, there was not (yet) probable cause to justify his arrest. This is apparent when one reads the last line quoted from **Martin** above, as there would be no need to "detain the suspect for a reasonable time while the warrant is sought" if probable cause already existed to arrest him. **Id.** at 61.

Here, however, Appellant does not dispute the legality of his arrest. Instead, he asserts that, despite the lawfulness of his arrest, the police were required to obtain a warrant to search the backpack he was wearing because of an absence of exigent circumstances. However, as the United States Supreme Court stated in **DeFillippo**, "The fact of a lawful arrest, standing alone, authorizes a search." **DeFillippo**, 443 U.S. at 35. In other words, exigency is not required to conduct a search incident to arrest.

A search incident to arrest is only circumscribed in physical terms, by "the area within the arrestee's immediate control." **Talyor**, 771 A.2d at 1271. While a **Terry** pat-down is similarly constrained, it is only justified when police also possess a "reasonable belief that criminal activity is afoot, **and** that the suspect may be armed and dangerous." **Commonwealth v. Mesa**, 683 A.2d 643, 646 (Pa. Super. 1996) (emphasis added). By contrast, a search conducted incident to arrest is justified based on the arrest itself; officer safety and exigency are irrelevant to the justification for the search of satchels, backpacks, purses, and similar containers found within the immediate sphere of an arrestee's control at the time of his or her lawful arrest.

- 10 -

Finally, in *Taylor*, police had secured a search warrant authorizing the search of a convenience store based on complaints of drug activity corroborated by surveillance and a controlled drug buy. After finding crack cocaine behind the counter and detaining the owner,

> two officers went down a set of stairs and into the basement of the building. In the basement, the officers encountered Taylor, sitting in a barber's chair and wearing a black plastic apron over his torso. The police observed Mahone cutting Taylor's hair. The basement contained one other barber's chair and some hair-cutting equipment.
>
> After the officers announced their presence, Officer Richard Scott Adams (Officer Adams) noticed Taylor's hands moving underneath the plastic apron. Fearing that Taylor could be reaching for a weapon, Officer Adams removed the apron and patted the exterior of Taylor's pocket. Officer Adams felt a hard object and removed it from Taylor's pocket. The object was a plastic prescription bottle, which appeared to contain crack cocaine. After arresting Taylor and placing him in handcuffs, Officer Adams searched Mahone. Officer Adams did not find anything incriminating on Mahone. Then, Officer Adams handcuffed Mahone, while Constable Gordon McIntyre (Constable McIntyre) searched two coats, which were draped on a chair ten feet from Taylor and Mahone. Constable McIntyre discovered additional pieces of crack in Taylor's coat and several baggies containing marijuana in Mahone's coat.

*Taylor*, 771 A.2d at 1264.

The *Taylor* Court first concluded that the basement barber shop was not within the scope of the warrant secured for the search of the convenience store but, nevertheless, the Court found that the police were permitted to conduct a protective sweep of the basement barber shop on officer safety grounds. The Court also held that the search of Taylor was justified as a *Terry* pat-down. However, the Court found that the

- 11 -

warrantless search of the coats was not justified as a search incident to arrest because "the two coats … were not within Taylor's immediate control." *Id.* at 1272.

*Taylor* is clearly not analogous to the instant case. Appellant was wearing the at-issue backpack when he was lawfully arrested. Taylor, however, was not wearing either of the coats when he was arrested, nor were they in an area within his immediate control.

In sum, we agree with the trial court and the Commonwealth that the search of Appellant's backpack was justified, as a search incident to his arrest, because the backpack was within his immediate control at the time of his lawful arrest. Appellant's arguments to the contrary are unconvincing, as he has not cited any controlling authority establishing that additional justification was required to permit such a search. Therefore, we hold that the trial court's ruling denying Appellant's motion to suppress evidence seized as a result of the warrantless search of his backpack is both supported by the undisputed facts of record and free of legal error.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/3/2016