**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Grace C. ENICK, Appellant.**

Superior Court of Pennsylvania.

Submitted May 28, 2013.
Filed July 9, 2013.

Michael S. Sherman, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE: DONOHUE, OLSON and MUSMANNO, JJ.

OPINION BY DONOHUE, J.:

Appellant, Grace C. Enick ("Enick"), appeals from the June 1, 2012 judgment of sentence imposing ninety days of house arrest and 18 months of probation for driving under the influence of alcohol.[1] We affirm.

The trial court recited the following facts in its Pa.R.A.P. 1925(a) opinion:

On October 18, 2011, at approximately 2:38 a.m., Officer Daniel Rhyslop, a Corporal with the Mt. Lebanon Police Department, was on patrol traveling northbound on Washington Road (also known as Route 19), approaching the 1400 block of Washington Road, when he observed a green Toyota traveling southbound in the center lane. As he was approaching the vehicle, he observed half of the vehicle cross the double yellow lines into oncoming traffic for approximately 2–3 seconds. Officer Rhyslop testified that there was no obstruction in her lane of traffic, and there were no signals to indicate she (Enick) should be traveling over the centerline.

Officer Rhyslop further testified, because driving on the wrong side of the roadway is a motor vehicle [code] violation, he initiated a traffic stop. He indicated that he continued to drive north to check the area for any obstructions in the roadway, then he turned around and proceeded behind Enick and executed a traffic stop at approximately the 1600 block of Washington Road. When Officer Rhyslop came into contact with Enick, he testified that she had a strong odor of alcoholic beverage on her breath and person; her eyes were glassy; her speech was slurred; and her movements were slow. The Officer asked Enick to perform the standardized field sobriety tests of walk and turn, and the one leg stand. Officer Rhyslop testified during the walk and turn test, she failed to touch heel to toe on almost every step and she did not perform the turn as he demonstrated. She further failed to maintain the starting position, lost her

---

1. The trial court stayed commencement of the sentence pending the outcome of this appeal.

balance from that position and failed to count her steps off as she walked.

Officer Rhyslop had her perform an additional field sobriety test of the one leg stand. During this test, she failed to keep her arms at her side; failed to raise her foot six inches off the ground; and failed to look at her elevated foot.

Officer Rhyslop opined that Enick was significantly impaired, she was a danger to other motorists on the roadway, and unable to safely operate a motor vehicle. Enick submitted to a blood alcohol test at the St. Clair Hospital at approximately 3:14 a.m. and the results were an alcohol content level of .178. In the Officer's report, he documented Enick admitted her vehicle was over the double yellow line.

On cross-examination, Officer Rhyslop testified a videotape was recorded of the events that occurred on October 18, 2011. However, after a thorough review of the videotape, this Court found that the video neither supported nor took away from the Officer's testimony, because it did not really address the moment when the vehicle crossed the centerline. The tape only established that the lights of Enick's vehicle were pointed in the direction of the Officer's vehicle, which somewhat supported the proposition that her vehicle was outside of the lane of travel. The Officer was able to point out in the video where Enick's vehicle lights were pointed in the direction of the Officer indicating Enick's vehicle was over the double yellow line.

Trial Court Opinion, 1/17/13, at 3–5 (record citations omitted).

Enick filed a pre-trial motion to suppress evidence, arguing that the vehicle stop was unlawful. At the conclusion of Enick's suppression hearing, the trial court found Officer Rhyslop's testimony credible and concluded the vehicle stop

was lawful. Enick proceeded to a bench trial on stipulated facts, and the trial court found Enick guilty of driving under the influence of alcohol (75 Pa.C.S.A. § 3802(a)(1) and (c)), and failure to drive on the right side of the roadway (75 Pa. C.S.A. § 3301(a)).

Enick filed a timely appeal from the judgment of sentence. She raises two issues, both of which challenge the trial court's denial of her motion to suppress evidence:

1. Where the trial court agreed that the dashboard camera video did not depict the event the officer claimed to observe, was the denial of the suppression motion supported by the record?

2. Did the trial court err in failing to grant [Enick's] motion for suppression where the officer claimed to observe [Enick] cross the double yellow lines on only one occasion for two or three seconds?

Enick's Brief at 1.

■■■ We review the trial court's denial of Enick's suppression motion to determine whether the record supports the trial court's findings of fact and whether the trial court erred in its legal conclusions. *Commonwealth v. Baker*, 24 A.3d 1006, 1015 (Pa.Super.2011), *appeal granted,* 613 Pa. 507, 35 A.3d 3 (2012). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* If the record supports the trial court's findings of fact, we will reverse only if the trial court's legal conclusions are incorrect. *Id.*

Officer Rhyslop testified that he stopped Enick's vehicle because he observed a violation of § 3301(a) of the Motor Vehicle Code, pursuant to which motorists must

drive on the right side of the roadway. N.T., 5/31/12, at 6. The trial court credited Officer Rhyslop's testimony, and therefore found that Enick failed to keep her vehicle on the right side of the road. In her first argument, Enick asserts that the record fails to support the trial court's finding.

At the suppression hearing, Enick sought to discredit Officer Rhyslop's testimony with footage from the dashboard camera of Rhyslop's service vehicle. During playback, Officer Rhyslop indicated that Enick's vehicle crossed the double yellow centerline based on the positioning of Enick's headlights (this incident occurred at nighttime). *Id.* at 16, 22. The trial court found that the footage did not bolster or undermine Officer Rhyslop's testimony because the footage did not clearly depict the centerline. *Id.* at 71.

■ After conducting our own review of the suppression hearing transcript and the footage, we conclude that the record supports the trial court's findings of fact. Officer Rhyslop testified to his personal observation of Enick's vehicle veering halfway across the centerline. The footage from Officer Rhyslop's vehicle does not undermine Rhyslop's testimony. Enick's first argument lacks merit.

■ Next, Enick argues that the trial court's legal conclusion was erroneous even if Enick's vehicle breached the centerline. Enick argues that a single breach of the centerline—"a momentary and minor deviation from the norm"—is insufficient to create probable cause in support of the vehicle stop. Enick's Brief at 15. Where a vehicle stop has no investigatory purpose, the police officer must have probable cause to support it. *Commonwealth v. Feczko,* 10 A.3d 1285, 1291 (Pa.Super.2010) (*en banc*).[2] Here, Officer Rhyslop stopped Enick for driving over the centerline, in violation of § 3301. He did not stop Enick for suspected DUI. The Commonwealth does not dispute that the stop served no investigatory purpose, and therefore the stop is valid only if Officer Rhyslop had probable cause.[3]

Enick argues, based on *Commonwealth v. Gleason,* 567 Pa. 111, 785 A.2d 983 (2001), that Officer Rhyslop did not articulate facts sufficient to create probable cause. In *Gleason,* a police officer observed the defendant's vehicle cross six to eight inches over the fog line two times over the span of a quarter mile. *Id.* at 112, 115, 785 A.2d at 983, 985. The police officer observed no other vehicles on the road. *Id.* The officer stopped the defendant's vehicle for failing to drive within a single lane, in accordance with § 3309(1) of the Vehicle Code. *Id.* That section provides: "A vehicle shall be driven **as nearly as practicable** entirely within a single lane and shall not be moved from the lane until

---

**2.** The *Feczko* Court addressed § 6308(b) of the Vehicle Code, which permits vehicle stops if an officer has reasonable suspicion of a Vehicle Code violation. *Feczko,* 10 A.3d at 1287. This Court's analysis in *Feczko* clarified that reasonable suspicion is the appropriate standard where further investigation is required to confirm the suspected Vehicle Code violation. *Id.* at 1291. In the main text, we will rely on several cases predating the current version of § 6308(b) because they apply a probable cause standard to determine the validity of stop for a Vehicle Code violation.

**3.** "The officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code." *Commonwealth v. Lindblom,* 854 A.2d 604, 607 (Pa.Super.2004) (citations omitted), *appeal denied,* 582 Pa. 672, 868 A.2d 1198 (2005). "Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Id.*

the driver has first ascertained that the movement can be made safely." 75 Pa. C.S.A. § 3309(1) (emphasis added). Subsequently, the police officer observed that the defendant was intoxicated, and that he was in possession of drugs and drug paraphernalia. *Gleason*, 567 Pa. at 115, 785 A.2d at 985. The defendant argued that the stop was unlawful and that the trial court erred in refusing to suppress the evidence the police officer gathered. *Id.* The *Gleason* Court concluded that the vehicle stop was not supported by probable cause because no evidence established that the defendant's driving "created a safety hazard." *Id.* at 121, 785 A.2d at 989.

Enick also relies on *Commonwealth v. Garcia*, 859 A.2d 820 (Pa.Super.2004). In *Garcia*, a police officer observed the defendant's vehicle briefly drive over the right berm line two times over the span of two blocks. *Id.* at 821–22. On both occasions, the defendant's car veered slightly right in response to an oncoming vehicle traveling in the opposite direction. *Id.* In executing the vehicle stop, the police officer noticed that the defendant had glassy eyes and smelled of alcohol. *Id.* at 822. The police officer apprehended the defendant for DUI. *Id.* On appeal, the defendant argued that the police officer lacked probable cause in support of the vehicle stop. *Id.*

This Court held that the trial court erred in denying the defendant's motion to suppress, as his violations were only "momentary and minor." *Id.* at 823.

■ Similarly, Enick argues that her Vehicle Code violation in this case was momentary and minor and thus, did not support a finding of probable cause to support the stop. We disagree. First, as set forth above, § 3309(1) of the Vehicle Code requires motorists to maintain a single lane "as nearly as practicable." 75 Pa.C.S.A. § 3309(1). Thus, the statutory language does not foreclose minor deviations. In comparison, § 3301 provides that "a vehicle shall be driven on the right half of the roadway" subject to exceptions [4] that are not implicated in this case. 75 Pa.C.S.A. § 3301(a). The record plainly indicates that Enick violated § 3301 in this case. Since the language of § 3301 does not include language allowing for unspecified deviations from the rule, we need not analyze whether she complied with § 3301 "as nearly as practicable." *See Commonwealth v. Chernosky*, 874 A.2d 123, 128 (Pa.Super.2005) (*en banc*) (noting that the defendant violated § 3301(a) by crossing the double yellow line where none of the statutory exceptions applied).

---

**4.** Section 3301(a) reads as follows:

§ 3301. Driving on right side of roadway.
(a) General rule.—Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:
(1) When overtaking and passing another vehicle proceeding in the same direction where permitted by the rules governing such movement.
(2) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.

(3) When and where official traffic-control devices are in place designating a lane or lanes to the left side of the center of the roadway for the movement indicated by the devices.
(4) Upon a roadway restricted to one-way traffic.
(5) When making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (relating to required position and method of turning).
(6) In accordance with section 3303(a)(3) (relating to overtaking vehicle on the left).
75 Pa.C.S. § 3301(a).

■ Our analysis here does not foreclose the possibility that a momentary and minor violation of § 3301 might, in a different case, be insufficient to establish probable cause for a vehicle stop. Motorists maintain a constitutionally protected privacy interest in their vehicles that we must balance against strict enforcement of the Vehicle Code when such enforcement is a ruse to stop a vehicle.[5] We simply wish to emphasize that in considering whether a Vehicle Code violation is momentary and minor, we must give due consideration to the language of the code provision at issue.

Our second point of disagreement with Enick is that the record before us does not evince a minor violation of § 3301. The vehicles in *Gleason* and *Garcia* were mere inches over the fog line or berm line—i.e., the vehicles swerved to the right—and out of the path of any oncoming traffic. The *Gleason* Court noted that the road was clear of other traffic when the defendant swerved a few inches outside fog line. *Gleason*, 567 Pa. at 115, 785 A.2d at 985. Instantly, half of Enick's vehicle crossed over the double yellow centerline into an oncoming lane of traffic and remained there for three seconds. Officer Rhyslop was driving in an oncoming lane when Enick committed the violation. *Gleason* is further distinguishable because, according to the *Gleason* Court, the defendant's actions posed no safety hazard. *Id.* at 121, 785 A.2d at 989. The same could be said of the facts of *Garcia*. Here, Enick's driving plainly posed a safety hazard, with half of her vehicle protruding into an oncoming lane as Officer Rhyslop's vehicle approached from the opposite direction.

Finally, Enick relies on *Commonwealth v. Carlson*, 705 A.2d 468 (Pa.Super.1998) for the proposition that a single crossing of the centerline does not create probable cause to support a traffic stop for a Vehicle Code violation. In *Carlson*, however, this Court did not analyze whether a breach of the centerline provides sufficient grounds for a stop based on a Vehicle Code violation. Rather, we concluded that a single breach of the centerline does not provide reasonable suspicion or probable cause in support of a vehicle stop for suspected DUI. *Id.* at 471. The arresting officer in *Carlson* was a member of the Pennsylvania Game Commissioner's office, not a police officer. *Id.* As such, he lacked statutory authority to make a vehicle stop for a summary offense such as a Vehicle Code violation. *Id. Carlson* is therefore inapposite.

Based on the foregoing, we conclude that Officer Rhyslop had probable cause to stop Enick for a violation of § 3301(a). The trial court did not err in denying Enick's motion to suppress evidence.

---

5. In *Lindblom*, we wrote:
The Commonwealth has an interest in enacting and enforcing rules and regulations for the safety of those who travel its highways and roads. The police should thus be permitted a sufficient degree of latitude to stop automobiles in order to meet this objective. On the other side, the privacy interest of the individual has been cogently articulated by the United States Supreme Court:
An individual operating or traveling in an automobile does not lose all reasonable expectation of privacy simply because the automobile and its use is subject to government regulation. Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel.
*Lindblom*, 854 A.2d at 607–08 (Pa.Super.2004) (*quoting Delaware v. Prouse*, 440 U.S. 648, 662, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)).

 

Since we have determined that neither of Enick's arguments warrants relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.