J-S39018-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MARCUS NEAL PALMER | |
| Appellant | No. 1399 WDA 2016 |

Appeal from the Judgment of Sentence September 15, 2016
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0000547-2011

BEFORE:  BENDER, P.J.E., BOWES AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JULY 26, 2017**

Marcus Neal Palmer appeals from his judgment of sentence of thirty days to six months incarceration that was imposed after he was found guilty of driving under the influence ("DUI") – general impairment, DUI – high rate of alcohol, possession of a small amount of marijuana, possession of paraphernalia, and reckless driving.  We affirm.

The suppression court outlined the salient facts as follows.

> [O]n January 31, 2011 at approximately 1:11 a.m. while parked near the Country Town gas station in the Greater Butler Mart shopping center, [Patrolman David Diyanni] heard the squealing of a vehicle's tires coming from the McDonald[']s restaurant's drive through area.  Patrolman Diyanni is a fifteen (15) year veteran of law enforcement.  He testified that he did not observe any snow or ice on the road surface that morning. He observed a black Dodge pickup truck in the McDonalds' [sic] drive through area and twice more heard the truck's tires squeal.

---

*  Retired Senior Judge assigned to the Superior Court.

       [Appellant], the operator of the truck, proceeded southbound through the parking lot when Patrolman Diyanni initiated a traffic stop on the basis of probable cause for reckless driving. [Patrolman Diyanni] testified that the squealing was intentional. He also testified that there were no other vehicles or pedestrians in the drive through area at the time of the incident.

Suppression Court Opinion, 9/13/11, at 2.

Appellant filed an omnibus motion to suppress. In that motion he contended, *inter alia*, that the patrolman lacked probable cause to believe that he committed a traffic violation, and therefore, the subsequent traffic stop and arrest were illegal. The suppression court concluded that the sudden acceleration and braking, which caused Appellant's tires to squeal, in such close proximity to the restaurant and its attendants, placed those people and that property in an unjustifiable risk of danger so as to form probable cause to believe that Appellant engaged in reckless driving. Accordingly, it denied Appellant's omnibus pre-trial motion to suppress.

Thereafter, the parties stipulated to the circumstances giving rise to the traffic stop as outlined above, and Patrolman Diyanni's observations upon seizing Appellant, including that Appellant smelled of alcohol, that he failed field sobriety tests, that he had a blood alcohol content of .116 within two hours of operating a vehicle, and that Patrolman Diyanni would testify to Appellant's possession of a small amount of marijuana. The court found Appellant guilty of the aforementioned offenses, and scheduled the matter for sentencing.

Following his conviction, but prior to sentencing, Appellant absconded. The court issued a bench warrant, but Appellant remained missing for over four years. On September 15, 2016, Appellant returned before the court for sentencing, at which time the court imposed a sentence of thirty-days to six months imprisonment, plus fines. Appellant timely appealed, and complied with the court's order to file a Rule 1925(b) concise statement of errors complained of on appeal. The court authored its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises one question for our consideration: "Whether the trial court erred in not suppressing the traffic stop of the Appellant, who was stopped for reckless driving for spinning his vehicle wheels in a drive[-through?]" Appellant's brief at 2.

As a preliminary matter, the Commonwealth argues that Appellant forfeited his right to an appeal by fleeing the state prior to sentencing. Our High Court has previously held that, "a defendant's voluntary escape acts as a *per se* forfeiture of his right to an appeal, where the defendant is a fugitive at any time after post-trial proceedings commence." ***Commonwealth v. Jones***, 610 A.3d 439, 441 (Pa. 1992). However, in ***Commonwealth v. Deemer***, 705 A.2d 827, 829 (Pa. 1997), the Court abrogated ***Jones***, in part, holding that there was no "absolute rule of forfeiture of appellate rights." It explained that "a fugitive who returns to court should be allowed

to take the system of criminal justice as he finds it upon his return: if time for filing has elapsed, he may not file; if it has not, he may." **Id**.

Since the trial court did not impose Appellant's sentence until after he returned to Pennsylvania, the time for filing a notice of appeal to this Court had not elapsed. **See** Pa.R.A.P. 903 ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court."). As such, Appellant did not forfeit his right to a direct appeal by fleeing following his conviction because he returned prior to the imposition of his sentence. **See Commonwealth v. Huff**, 658 A.2d 1340 (Pa. 1995) (reinstating defendant's appellate rights where he fled and was recaptured before he was sentenced by the trial court). Hence, we will reach the merits of this appeal.

Appellant's challenge relates to the denial of his motion to suppress. We evaluate the denial of a suppression motion under well-established principles. Our review is limited to

> determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Since] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Postie**, 110 A.3d 1034, 1039 (Pa.Super. 2015) (citation omitted).

Appellant contends that Patrolman Diyanni lacked probable cause to determine that he was in violation of the Vehicle Code at the onset of the traffic stop.[1] In order to justify a traffic stop in the instant circumstances, an "officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code." *Commonwealth v. Enick*, 70 A.3d 843, 846 n.3 (Pa.Super. 2013) (citation omitted). Moreover, "[p]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Id*. Finally, "[i]n determining whether probable cause exists, we apply a totality of the circumstances test." *Commonwealth v. Delvalle*, 74 A.3d 1081, 1085 (Pa.Super. 2013). This involves an objective determination, and must be "viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene

_____

[1] We have previously held that "[i]f it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle." *Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa.Super. 2015). Further, "[w]here a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop." *Id*. Patrolman Diyanni testified that he stopped Appellant's vehicle because Appellant, by squealing his tires, posed a "potential hazard." N.T. Suppression Hearing, 7/20/11, at 7. Since the prospective Vehicle Code violations implicated by this testimony, namely careless driving or reckless driving, would not require further investigation, the stop in question must be justified by probable cause.

at the time of the [seizure] guided by his experience and training."

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation omitted).

Under the Vehicle Code, a person is guilty of reckless driving when he "drives any vehicle in willful or wanton disregard for the safety of persons or property[.]" 75 Pa.C.S. § 3736(a). Careless driving requires only that a person "drives a vehicle in careless disregard for the safety of persons or property[.]" 75 Pa.C.S. § 3714(a).

Appellant insists that merely squealing his tires did not rise to the level of "a gross departure from prudent driving standards," as required by 75 Pa.C.S. § 3736. Appellant's brief at 11. Further, he claims that his conduct did not evince willful and wanton conduct. Hence, the patrolman did not have probable cause to stop him for reckless driving. In similar fashion, Appellant concludes that Patrolman Diyanni lacked probable cause to stop Appellant for careless driving.[2] He emphasizes that his conduct occurred early in the morning, in a drive-through lane, in the absence of pedestrians or other vehicles, and thus, he did not pose a danger to people or property. He asserts that, since his stop was based on a "potential hazard" and not an

_____

[2] Appellant also argues that Patrolman Diyanni lacked probable cause to stop him for disorderly conduct. Based on our disposition herein, we need not address this claim.

"actual one," his "act of briefly squealing [his] tires [was] not more than ordinary negligence." Appellant's brief at 13.

We find that, based on the totality of the circumstances, Patrolman Diyanni articulated specific facts that would lead a prudent and reasonable police officer to infer that the driver was in "some violation of some provision of the traffic code." *Enick*, *supra*. At the suppression hearing, Patrolman Diyanni testified that, at 1:11 a.m., he overheard a vehicle squealing its tires in a nearby McDonald's drive-through. Upon investigating the disturbance, he observed a black Dodge pickup truck "squeal its tires two more times as it traveled through the drive-through in the area of the order window and the pickup window." N.T. Suppression Hearing, 7/20/11, at 5. The officer described the sound as intermittent "squealing and stopping." *Id*. He stated that he initiated the traffic stop because he believed the squealing posed a "potential hazard." *Id*. at 7. The patrolman conceded that there were no pedestrians or other vehicles visible in the vicinity. *Id*. at 8-9. However, he asserted that the squealing was caused by "heavy acceleration." *Id*. at 10. When the officer was questioned as to the cause of the sound, he insinuated that it was produced intentionally, stating that, based on his experience as a police officer, "if somebody is intentionally squealing a tire, it has a certain sound to it," and further, "that the acceleration, heavy acceleration caused the rear tires of the vehicle to break traction." *Id*. at 12-13.

We find that, based on the above testimony, the potential danger to persons or property caused by Appellant's rapid acceleration and braking, so that his tires lost traction with the pavement, would lead a prudent police officer to infer that Appellant was operating his vehicle in a manner constituting careless driving.[3] The danger implicit in such sudden acceleration in a restaurant parking lot, to the point where the vehicle's tires lost traction, regardless of whether other vehicles or pedestrians were immediately in sight, would lead a reasonable police officer to conclude that the conduct constituted a violation of the Vehicle Code. By spinning his tires such as he did, Appellant created a situation where he was not in complete control of his vehicle. That lack of control, in an area adjacent to a building and where pedestrian and vehicular traffic was foreseeable, unnecessarily raised the specter of damage to person or property. Patrolman Diyanni's observations support the reasonable inference that Appellant's conduct

---

[3] We recognized that the *mens rea* applicable to convict a person of careless driving requires that the Commonwealth prove beyond a reasonable doubt that the person acted with "less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." **Commonwealth v. Gezovich**, 7 A.3d 300, 301 (Pa.Super. 2010) (citation omitted). We note that, under the relevant standard of review, the evidence available to Patrolman Diyanni at the time of the traffic stop did not need to meet this standard, but only show that a prudent, reasonable, and cautious police officer could make a reasonable inference that such behavior constituted a violation of the Vehicle Code. **Commonwealth v. Martin**, 101 A.3d 706, 721 (Pa. 2014); **Commonwealth v. Enick**, 70 A.3d 843, 846 n.3 (Pa.Super. 2013).

violated the Vehicle Code. ***Enick***, ***supra***. Hence, based on the totality of the circumstances, Patrolman Diyanni had probable cause to effectuate a traffic stop, and the suppression court did not err in denying Appellant's omnibus pre-trial motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2017