J-A23012-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : : | |
| v. | : : : | |
| MARVIN LYNN BRISON | : : | No. 2540 EDA 2016 |

Appeal from the Order July 18, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004516-2014

BEFORE: PANELLA, J., DUBOW, J., and FITZGERALD*, J.

MEMORANDUM BY PANELLA, J.                    **FILED DECEMBER 11, 2017**

The Commonwealth of Pennsylvania appeals from the order entered in the Delaware County Court of Common Pleas. The order granted Appellee Marvin Lynn Brison's motion to suppress evidence gathered in the course of his encounter with police after he was suspected of driving under the influence ("DUI"). We reverse the suppression court's order and remand for further proceedings.

On March 16, 2014, Officer Kevin Mitchell was working an overnight shift in his marked patrol car. Officer Mitchell was responding to another officer's call for assistance when he noticed a large sports utility vehicle ("SUV") drift into the opposite lane of travel, a violation of the Vehicle Code. The officer decided to follow the vehicle, but did not pull over the SUV or activate his overhead lights. Officer Mitchell noticed that the SUV crossed over the double

_____
* Former Justice specially assigned to the Superior Court.

yellow line once more, and that the vehicle also crossed over the fog line twice. The SUV pulled into a parking lot. Officer Mitchell also pulled into the lot, and observed Brison open the driver's side door. Brison held onto the door frame and stumbled as he clambered out of the SUV. The officer then exited his squad car and approached Brison to ask for his license. Officer Mitchell smelled a strong odor of alcohol coming from Brison, and took note of his red eyes, drooping eyelids, and slurred speech in response to the officer's query about his address.

Officer Mitchell asked Brison to perform field sobriety tests. Brison refused, and denied having driven. Officer Mitchell arrested Brison.

After Brison was charged with DUI, failing to drive on the right side of the roadway, and operating a vehicle without valid inspection,[1] he filed a pretrial motion seeking to suppress all evidence related to the stop. The court held a hearing on the motion, and ultimately granted it. The Commonwealth appeals from the order granting Brison's suppression motion.[2]

Our scope and standard of standard of review following an order granting a suppression motion are as follows.

> When reviewing the propriety of a suppression order, an appellate court is required to determine whether the record supports the suppression court's factual findings and whether the inferences

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1); 3301(a); and 4703(a), respectively.

[2] The Commonwealth has certified that the suppression order substantially handicaps the prosecution, and that the appeal is not intended for delay purposes. Thus, we may review it. *See* Pa.R.A.P. 311(d).

and legal conclusions drawn by the suppression court from those findings are appropriate. Because Appellee prevailed in the suppression court, we may consider only the evidence of the defense and so much of the evidence for the Commonwealth as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, where the appeal of the determination of the suppression court turns on allegations of legal error, "[t]he suppression court's conclusions of law ... are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts." As a result, the conclusions of law of the suppression court are subject to plenary review.

**Commonwealth v. Salter**, 121 A.3d 987, 992 (Pa. Super. 2015) (citation omitted; brackets in original).

Our review of the record with respect to the suppression court's factual findings reveals that the court's findings of fact are traceable to testimony in the record. Accordingly, we focus our attention to the propriety of the court's legal conclusions. The court's legal conclusion, that the stop was unlawful, is erroneous.

The Commonwealth classifies the interaction between Officer Mitchell and Brison very differently from the suppression court. The Commonwealth asserts on appeal that the interaction was not a "stop" at all, because Brison voluntarily parked and exited his SUV without any interaction with or compulsion by Officer Mitchell. The Commonwealth thus argues that the contact between Officer Mitchell and Brison initially constituted a mere encounter. Conversely, the suppression court treated the case as one where Officer Mitchell pulled over Brison's *vehicle*, which requires a separate analysis

pertinent to traffic stops. We find the suppression court erred in applying this reasoning.

There are three levels of interaction between citizens and police officers: (1) a mere encounter, (2) an investigative detention, and (3) a custodial detention. *See Commonwealth v. Fuller*, 940 A.2d 476, 478 (Pa. Super. 2007). A request for identification does not itself escalate an interaction between the police and citizens from a mere encounter to an investigative detention. *See Commonwealth v. Au*, 42 A.3d 1002, 1007 (Pa. 2012).

In order to justify an investigative detention, an officer must identify specific, articulable facts that lead to a reasonable suspicion that the detainee is engaged in criminal activity. *See Commonwealth v. Stevenson*, 894 A.2d 759, 771 (Pa. Super. 2006). This determination is an objective one, based upon the facts available to the officer at the time as well as his own experience. *See Commonwealth v. Reppert*, 814 A.2d 1196, 1204 (Pa. Super. 2002) (*en banc*). A custodial detention or arrest must be supported by probable cause. *See Commonwealth v. Fleet*, 114 A.3d 840, 845 (Pa. Super. 2015). "Probable cause [for a DUI arrest] exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance." *Commonwealth v. Hilliar*, 943 A.2d 984, 994 (Pa. Super. 2008) (citation omitted).

Examining the legality of a traffic stop, conversely, relies on another inquiry. If a police officer possesses reasonable suspicion that a violation of

the Vehicle Code is occurring or has occurred, he may stop the vehicle involved for the purpose of obtaining information necessary to enforce the provisions of the Code. 75 Pa.C.S.A. § 6308(b). "Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citation omitted). Thus, an officer must possess probable cause that a motor vehicle violation has occurred in order to stop a vehicle for a non-investigatory purpose. ***See id***.

Section 3301 of the Vehicle Code instructs in relevant part:

**§3301. Driving on right side of roadway**

**(a) General rule.**—Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction where permitted by the rules governing such movement.

(2) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.

(3) When and where official traffic-control devices are in place designating a lane or lanes to the left side of the center of the roadway for the movement indicated by the devices.

(4) Upon a roadway restricted to one-way traffic.

(5) When making a left turn as provided in sections 3322 (relating to vehicle turning left) and 3331 (relating to required position and method of turning).

(6) In accordance with section 3303(a)(3) (relating to overtaking vehicle on the left).

75 Pa.C.S.A. § 3301(a).

The court notes that Officer Mitchell had the *intent* to stop Brison's vehicle when Brison chose to pull into the parking lot. ***See*** Suppression Court Opinion, filed 1/20/17, at 9. However, the *unrefuted* testimony from Officer Mitchell at trial—that the suppression court memorialized in its opinion—states that Brison pulled into the tavern parking lot *of his own accord*. ***See id.***, at 7; N.T., Suppression Hearing, 2/20/15, at 19.

Officer Mitchell did not activate his lights and sirens or otherwise halt the SUV. No evidence in the case suggests Brison was directed to pull over. After the officer stopped his car, but before he approached Brison, he observed the SUV's door open and Brison unsteadily exit the vehicle. At that time, Officer Mitchell exited his own car, stopped Brison, and asked for his license. Even considering only the uncontradicted evidence in this case, given Brison's status as the prevailing party, we find that the suppression court erred in analyzing this interaction as a vehicle stop. Simply put, the vehicle had previously stopped and Brison was no longer inside of it when the interaction took place.

Officer Mitchell had already seen Brison's SUV swerve over the double yellow line and the fog line multiple times while on the road. At the time Brison turned into the parking lot, Officer Mitchell had sufficient cause to stop the

vehicle based on that traffic violation alone.[3] However, Officer Mitchell then watched Brison stumble out of his SUV. Even assuming, without so deciding, that Officer Mitchell detained Brison at the time he asked for his license, Officer Mitchell had sufficient, articulable facts to support a reasonable belief that Brison was engaged in criminal activity—namely, driving under the influence. Between observing Brison's erratic driving and uncoordinated movements, Officer Mitchell was justified in detaining Brison.

During this investigatory detention, he observed Brison's red eyes, drooping eyelids, and slurred speech. He also noted that Brison smelled strongly of alcohol. Brison thereafter refused to comply with the officer's request to undergo sobriety testing. All of these observations confirmed Officer Mitchell's suspicion that Brison was driving while intoxicated. At that point, Officer Mitchell possessed probable cause to arrest Brison on suspicion of DUI.

Consequently, we find the court erred by suppressing evidence of this encounter. Accordingly, we reverse the suppression court's order.

Order reversed. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

[3] This Court has held that a police officer has probable cause to conduct a vehicle stop for a violation of 75 Pa.C.S.A. § 3301 after observing the vehicle cross the double yellow line a single time. *See Commonwealth v. Enick*, 70 A.3d 843, 846 (Pa. Super. 2013). Thus, if Officer Mitchell *had* pulled over Brison's SUV, he would have had the probable cause necessary for a traffic stop, having witnessed multiple violations of this provision of the Vehicle Code.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2017