J-A02038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v. :
:
:
:
STEVEN PAUL KARADUS :
:
Appellant : No. 636 WDA 2021

Appeal from the Judgment of Sentence Entered April 29, 2021
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000034-2020

BEFORE: OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: January 28, 2022**

Steven Paul Karadus (Karadus) appeals from the judgment of sentence entered in the Court of Common Pleas of Indiana County (trial court) following his bench conviction of driving under the influence of alcohol (DUI) — Highest Rate, DUI — General Impairment, Failing to Keep Right and Careless Driving.[1] Karadus challenges the trial court's denial of his motion to suppress evidence on the basis that the arresting Pennsylvania State Police Trooper lacked probable cause to initiate a traffic stop of his vehicle for Failing to Keep Right. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(c), 3802(a)(1), 3301(a), 3714(a).

**I.**

This case arises from the February 15, 2019 traffic stop of Karadus' vehicle at 2:00 a.m. on a rural, tar and chip road named Allison Road. The road is completely unmarked and has neither a center lane nor fog lines. It is very windy and is not lit.[2]

At the preliminary hearing, Trooper Joshua Gardner[3] testified that while he was travelling westbound on Allison Road, he drove behind an Audi sedan for over one mile. The Trooper "observed [the car] to be driving left of center." (N.T. Hearing, 1/13/20, at 5). Trooper Gardner explained that his standard for considering a vehicle travelling too far left of center on an unlined road is "that if a vehicle is coming the other way, it could cause a head-on collision." (*Id*. at 6). In Trooper Gardner's estimation, there was not enough room for another vehicle to pass by in the eastbound lane because Karadus' vehicle was in that lane.

Trooper Gardner initiated a traffic stop and asked Karadus to provide his driver's license. The Trooper detected the odor of alcohol emanating from

---

[2] The incident was captured on the Mobile Video Recorder (MVR) system in the police cruiser and the trial court considered the footage in rendering its decision.

[3] The parties' briefs on the suppression motion filed in the trial court and their respective briefs filed in this Court cite to the preliminary hearing testimony, indicating that there was no separate suppression hearing. We note that Trooper Gardner was the only witness called at the preliminary hearing and at trial.

inside of the vehicle and asked Karadus if he had been drinking. Karadus admitted to drinking a couple of beers and he exhibited several signs of impairment during field sobriety testing. Trooper Gardner arrested Karadus and Karadus consented to a blood draw which showed that his blood alcohol content was 0.191%.

On cross-examination, Trooper Gardner testified that there was no heavy traffic on Allison Road at the time of the incident and that the sole reason he initiated the traffic stop was because Karadus was driving left of center. The Trooper also testified that he did not know the width of Allison Road. (*See id.* at 10-11).

In March 2020, Karadus filed an omnibus pretrial motion seeking suppression of the evidence because the traffic stop was not supported by probable cause. The trial court denied the suppression motion in February 2021. It found Karadus guilty of the above-listed DUI and traffic offenses on March 3, 2021, after a bench trial. On April 29, 2021, the trial court sentenced Karadus to a term of incarceration of not less than 72 hours nor more than six months' imprisonment, followed by six months of probation. Karadus timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

In its 1925(a) opinion, the trial court noted that it had reviewed the MVR footage numerous times and detailed its observations that Karadus' vehicle drifted over the center of the roadway and at one point more than half of his

car was in the opposing lane of traffic; at that point, the vehicle was cresting a hill; the Audi was over the center of the roadway for a total of approximately six seconds; although there were "dark spots" in Karadus' lane of travel, it was "difficult to determine if the road is wet or there are parched potholes. However, there are no obstructions"; and Trooper Garner initiated the traffic stop as Karadus began to negotiate a right hand curve while straddling the center of the roadway. (Trial Court Opinion, 6/11/21, at 5-6). The trial court concluded that Karadus violated Section 3301 of the Vehicle Code; that his conduct did not constitute a "momentary and minor" violation of Section 3301; and that Trooper Gardner had sufficient probable cause to conduct the traffic stop of Karadus' vehicle. (*See id.* at 6-7).

## II.

On appeal, Karadus challenges the trial court's determination that the traffic stop was supported by probable cause.[4] Karadus points to Trooper

---

[4]

> Our standard of review over an order denying suppression requires us to consider only the Commonwealth's evidence and so much of the defense's evidence as remains uncontradicted when read in the context of the record as a whole. Where the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, as here, where the appeal turns on allegations of legal error, the suppression court's conclusions of law are not binding as it is this Court's duty to determine if the suppression court properly applied the law to the facts. As such, the legal conclusions of the lower courts are subject to our plenary review.

*(Footnote Continued Next Page)*

Gardner's admission that he did not know the width of Allison Road, and claims that the record does not demonstrate that the road was of sufficient width, as required by the language of Section 3301. Karadus also contends that the trial court erred in concluding that there were no obstructions on Allison Road despite its observation that there were "dark spots" in the roadway. Additionally, citing **Commonwealth v. Garcia**, 859 A.2d 820 (Pa. Super. 2004), Karadus argues that his violation of the Vehicle Code was merely "minor and momentary" and insufficient to form the basis of probable cause.

Section 3301 of the Vehicle Code provides in relevant part:

**(a) General rule**.—Upon all roadways of **sufficient width**, a vehicle **shall be driven upon the right half** of the roadway except as follows:

* * *

(2) When an obstruction exists making it necessary to drive to the left of the center of the roadway, provided the driver yields the right-of-way to all vehicles traveling in the proper direction upon the unobstructed portion of the roadway within such distance as to constitute a hazard.

75 Pa.C.S. § 3301(a)(2)(emphasis added).

The level of suspicion that a police officer must possess before initiating a traffic stop is codified in 75 Pa.C.S. § 6308(b), which provides as follows:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers

---

**Commonwealth v. Dunkins,** 263 A.3d 247, 252 (Pa. 2021) (citation omitted).

or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

A traffic stop based on reasonable suspicion must serve an investigatory purpose, while a stop based on an observed vehicle code violation or "non-investigable offense" must be supported by probable cause. ***Commonwealth v. Harris***, 176 A.3d 1009, 1019 (Pa. Super. 2017). "Thus, there is a distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." ***Commonwealth v. Walls***, 206 A.3d 537, 541 (Pa. Super. 2019) (citation and quotation marks omitted), *appeal denied*, 218 A.3d 393 (Pa. 2019); ***see also Commonwealth v. Chase***, 960 A.2d 108, 116 (Pa. 2008) (stating that "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible"); ***Sands***, 887 A.2d at 270 (stating that "a suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence").

In this case, though, while the reasons Trooper Gardner articulated may have constituted reasonable suspicion that Karadus was driving under the influence, Trooper Gardner testified that he did not stop Karadus' vehicle on

that basis but for a Vehicle Code violation.  It is well-settled that "when no further investigation is necessary to determine if a driver committed a traffic violation or crime, the officer must possess probable cause to believe that the vehicle or the driver was in violation of some provision of the Code." *Commonwealth v. Bozeman*, 205 A.3d 1264, 1270 (Pa. Super. 2019). Where an individual's vehicle is stopped for a suspected violation of Section 3301, as is the case here, a police officer must possess probable cause because such a stop does not serve any investigatory purpose.  *See Commonwealth v. Enick*, 70 A.3d 843, 846 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014).

"Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the stop, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Bozeman*, *supra* at 1277 (citation omitted).  We apply a totality of the circumstances test and require only a **probability**, and not a **prima facie** showing, of criminal activity.  *See id.*

"This Court has previously held that a police officer has probable cause to believe that Section 3301(a) has been violated where the officer witnesses a driver's vehicle cross the double-yellow centerline into the oncoming lane, and remain there for approximately 2-3 seconds, while another vehicle is approaching in the oncoming lane." *Commonwealth v. Arrington*, 233 A.3d

910, 914 (Pa. Super. 2020) (citing **Enick**, **supra** at 847-48; **but see id.** at 848 (stating that "our analysis here does not foreclose the possibility that a momentary and minor violation of § 3301 might, in a different case, be insufficient to establish probable cause for a vehicle stop.")).

In this case, Trooper Gardner stopped Karadus' vehicle after he observed it driving left of center on a very windy, dark roadway. The Trooper followed the vehicle for over one mile and he observed it move into the oncoming lane for several seconds. He opined that Karadus' unsafe driving could have caused a head-on collision if a car had approached from the opposite direction. At one point when Karadus was cresting a hill, more than half of his vehicle was in the opposing traffic lane. Although Trooper Gardner did not know the exact width of the roadway, it is clear from his testimony that the road was of "sufficient width" to allow for two-lane travel, as he was concerned about the possibility of a head-on collision. Additionally, the trial court reached its determination that any "dark spots" on the road were not obstructions forcing Karadus to drive into the opposing lane only after it carefully reviewed the MVR footage numerous times to evaluate the road conditions.

Based on the foregoing and considering the totality of the circumstances, **see Bozeman**, **supra** at 1277, we agree with the trial court's conclusion that Trooper Gardner had adequate probable cause to believe that

Karadus failed to keep right under Section 3301 of the Vehicle Code and that the traffic stop was valid.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/28/2022

_____

[5] We acknowledge Karadus' citation to **Garcia**, **supra**, and find it unavailing. In **Garcia**, a police officer observed the defendant's vehicle briefly drive over the right line two times over the span of two blocks. **Id.** at 821–22. We held that the defendant's "momentary and minor" crossing of the right traffic line did not give the officer probable cause to conduct a traffic stop under Section **3309**(1) of the Vehicle Code, concerning Driving On Roadways Laned for Traffic. **Id.** at 823. Here, Karadus was stopped under Section 3301 of the Code.

The defendant in **Enick** made a similar argument regarding her Section 3301 offense and we explained that "Section 3309(1) of the Vehicle Code requires motorists to maintain a single lane 'as nearly as practicable.' Thus, the statutory language does not foreclose minor deviations." **See Enick**, **supra** at 847. We noted that Section 3301 does not contain similar language and the defendant's reliance on **Garcia** was misplaced. **See id.** at 847-48.