J-A01017-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN KING JACKSON | : | |
| | : | |
| Appellant | : | No. 507 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 20, 2024
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000502-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED APRIL 20, 2026**

Martin King Jackson appeals from the judgment of sentence entered after he was convicted of driving under the influence (DUI, three counts), possession of a small amount of marijuana, driving on roadways laned for traffic, and careless driving.[1]  Among other claims, he challenges the denial of his motion to suppress evidence.  Because the Commonwealth did not prove that the police had probable cause to initiate a traffic stop, we reverse.

Trooper Thomas Rehberg of the Pennsylvania State Police conducted a traffic stop of Jackson on December 13, 2022.  He thereafter charged Jackson, and the charges were held for court.  Jackson moved to suppress all evidence derived from the traffic stop.  The trial court heard Jackson's motion on March 7, 2024.

_____

[1] 75 Pa.C.S. § 3802(d)(1)(i), (ii), and (iii), 35 P.S. § 780-113(a)(31)(i), and 75 Pa.C.S. §§ 3309(1) and 3714(a), respectively.

At the hearing, the Commonwealth presented the testimony of Trooper Rehberg and a motor vehicle recording from the dashcam of the police vehicle. Trooper Rehberg testified that on the night of the incident, he "saw [Jackson's] vehicle cross over the double yellow line between the intersection of State Route 434 and the Pike County carwash." N.T., 3/7/24, at 9. Although the trooper acknowledged that the video did not depict the violation, he identified the time in the video where he saw the cross-over. *Id.* at 11. He described how Jackson's vehicle was in the "median strip" of the road. *Id.* at 12–13. Trooper Rehberg described general safety concerns about oncoming traffic:

> Well, if a car was coming westbound on Route 6 without a headlight or no headlights on, which we often see working the midnight shift, this car would have been hit head on, and just if there's anybody else . . . walking in the roadway, any bicycles on this roadway, which we see a lot in this area because of the gas station, this car would have hit that vehicle.

*Id.* at 14 (commas added).

Trooper Rehberg also stated there are safety concerns for driving in the median strip, "because if there was another car that parked with their headlights off he would have hit that vehicle." *Id.* at 16. On cross-examination, Trooper Rehberg testified that Jackson traveled "probably say about ten feet" with "both tires . . . completely over the line." *Id.* at 19.

The trial court took the matter under advisement. In a subsequent order, the court found the following facts:

> With regard to [Jackson's] suppression motion, the Commonwealth presented testimony from Trooper Thomas Rehberg and a motor vehicle recording (MVR) of the incident in question. Trooper Rehberg's testimony can be summarized as

- 2 -

follows. On December 13, 2022 at approximately 11:31 p.m., Trooper Rehberg was on patrol duty in a marked police vehicle in the area of the intersection of State Routes 6 and 434 in Lackawaxen Township, Pike County. At that time and place, Trooper Rehberg encountered a 2016 Jeep Renegade traveling eastbound on State Route 6.

Trooper Rehberg testified that he witnessed the Jeep Renegade cross the double yellow line separating the eastbound traffic on Route 6 and the left hand turning lane going westbound on Route 6. The officer described the vehicle's front and rear driver's side tires crossing completely over the double yellow line for approximately ten (10) feet. Trooper Rehberg then effectuated a traffic stop of the above vehicle based on an alleged violation of Section 3309 of the Pennsylvania [] Vehicle Code.

Order, 5/16/24, at 2. The court denied Jackson's suppression motion, concluding that the traffic stop was supported by probable cause. *Id.* at 5.

The case proceeded to a non-jury trial on October 8, 2024. The trial court found Jackson guilty of the above offenses. On December 20, 2024, the trial court sentenced Jackson to 72 hours to 6 months of incarceration, as well as payment of fines.

Jackson filed timely post-sentence motions, which the trial court heard on January 9, 2025. The court denied the motions on January 14, 2025. Jackson timely appealed. Jackson and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

In addition to a sufficiency claim, Jackson presents the following question on appeal: "Did Trooper Rehberg lack sufficient probable cause to conduct the traffic stop of Appellant, Martin King Jackson, for violation of 75 Pa.C.S. § 3309(1) 'Driving on Roadways Laned for Traffic,' hence requiring suppression of evidence obtained by such traffic stop?" Jackson's Brief at 6.

Jackson argues that his case is controlled by **Commonwealth v. Gleason**, 785 A.2d 983 (Pa. 2001), *abrogated in part as described below*. We agree.[2]

The following standard applies to Jackson's suppression claim:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Lowrey**, 333 A.3d 440, 443 (Pa. Super. 2025) (quoting **Commonwealth v. Phillips**, 327 A.3d 1236, 1241 (Pa. Super. 2024)).

Pennsylvania law requires a police officer to have probable cause to stop a driver for a violation of the Vehicle Code that does not require additional investigation. **Commonwealth v. Feczko**, 10 A.3d 1285, 1290–91 (Pa. Super. 2010) (*en banc*) (following **Commonwealth v. Chase**, 960 A.2d 108, 115–16 (Pa. 2008)). This includes the law on driving within a single lane, Section 3309(1) of the Vehicle Code. **Id.** at 1291. The statute provides:

---

[2] Jackson combines the argument for his suppression claim and a sufficiency claim. We remind counsel that an appellate brief should divide the argument section "into as many parts as there are questions to be argued." Pa.R.A.P. 2119(a).

**Driving on roadways laned for traffic.**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

> **(1) Driving within single lane.--**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

In **Gleason**, the Supreme Court of Pennsylvania assessed whether a police officer had probable cause to stop a vehicle for a violation of this section when the officer observed the vehicle "cross[] the berm line by six to eight inches on two occasions for a period of a second or two over a distance of approximately one quarter of a mile." **Gleason**, 785 A.2d at 983. These deviations occurred on the West Chester Pike, a four-lane divided highway:

> Officer Rosato noticed a gray Mazda approximately eight to ten car lengths in front of him. He followed the vehicle and observed it cross the solid fog line on two or three occasions over a distance of approximately one quarter mile. During the period that Officer Rosato was following the vehicle, there were no other vehicles on the roadway.

*Id.* at 985 (footnote omitted).

The Supreme Court first held that a probable cause standard applied to a traffic stop for any Vehicle Code violation. *Id.* at 986–89 (following the then-effective version of 75 Pa.C.S. § 6308(b)). Because there was no "evidence at the suppression hearing that [Gleason's] driving created a safety hazard," the Supreme Court ruled that there was no probable cause to stop

- 5 -

Gleason for violating Section 3309(1). *Id.* at 989 (quoting the Superior Court decision below).

Notably, *Gleason*'s holding that probable cause must support every traffic stop has been abrogated by amendment to Section 6308(b). *See Chase*, 960 A.2d at 112. However, a stop for a Section 3309(1) violation continues to require probable cause. *Feczko*, 10 A.3d at 1291. Accordingly, *Gleason*'s application to that Vehicle Code provision remains valid. *See, e.g.*, *Commonwealth v. Cephus*, 208 A.3d 1096, 1099–1100 (Pa. Super. 2019).

Due to the fact-bound assessment of whether a driver's failure to drive within a single lane creates a safety hazard, "deciding a matter under the *Gleason* standard is not an easy task." *Commonwealth v. Garcia*, 859 A.2d 820, 823 (Pa. Super. 2004). Drawing from *Gleason*, we have concluded "that where a vehicle is driven outside the lane of traffic for just a momentary period of time and in a minor manner, a traffic stop is unwarranted" under Section 3309(1). *Id.* By contrast, if a driver's deviation from a lane is unsafe based on the circumstances, this generally provides probable cause for an officer to stop the driver for violating Section 3309(1). *Commonwealth v. Freeman*, 150 A.3d 32, 36 (Pa. Super. 2016) (citing *Commonwealth v. Cook*, 865 A.2d 869 (Pa. Super. 2004)) (probable cause, driving close to a tractor trailer to change lanes to pass a tanker truck); *see also Cephus*, 208 A.3d at 1100 (probable cause, crossing the center line at least four times).

Additionally, we distinguished *Gleason* to conclude that an officer had probable cause to stop a driver for a center-line deviation in *Commonwealth*

*v. Enick*, 70 A.3d 843 (Pa. Super. 2013) (cited here by both the trial court and the Commonwealth). In *Enick*, the driver drove half his vehicle "over the double yellow centerline into an oncoming lane of traffic and remained there for three seconds," and the officer who stopped her was driving in the opposite direction towards her. *Id.* at 848. The officer stopped the driver for violating Section 3301(a) of the Vehicle Code, which provides that, subject to exceptions, "a vehicle shall be driven on the right half of the roadway." *Id.* at 847 (quoting 75 Pa.C.S. § 3301(a)). We held that the "momentary and minor" principle of *Gleason* did not apply for two reasons. First, unlike the phrase "as nearly as practicable" in Section 3309(1), the plain language of Section 3301(a) does not allow for minor deviations. *Id.* Second, the driver's crossing halfway into the path of an oncoming police car for three seconds posed a safety hazard and was not minor. *Id.* at 848.

Here, *Gleason*, rather than *Enick*, controls. Jackson, like the driver in *Gleason*, drove outside of one lane for only a moment.[3] Like in *Gleason*, the traffic stop was based on Section 3309(1) of the Vehicle Code, which requires proof of a safety hazard. Like in *Gleason*, there was no evidence at the suppression hearing of any safety hazard from the brief deviation in the middle of the night, just speculative concerns that Jackson could have hit an unlit obstruction. Unlike in *Enick*, Jackson's center-line deviation was momentary

---

[3] Indeed, as Jackson argues, his travel of approximately ten feet forward with both tires over the center line would last only a fraction of a second, compared to the one-to-two-second deviation in *Gleason*.

and minor, and Trooper Rehberg stopped Jackson for violating Section 3309(1) rather than Section 3301(a). Therefore, **Gleason** controls and compels the conclusion that Trooper Rehberg lacked probable cause to stop Jackson under Section 3309(1).

Because the Commonwealth did not prove that the traffic stop was supported by probable cause, the trial court should have suppressed all evidence derived from the stop. "Accordingly, we reverse the suppression order and [Jackson's] convictions, vacate the judgment of sentence, and dismiss the charges against [Jackson]." **Lowrey**, 333 A.3d at 446.

Judgment of sentence vacated. Appellant discharged. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/20/2026